## BENJAMIN F. BENNETT vs. THE AGRICULTURAL INSURANCE COMPANY.

A policy of insurance upon a dwelling-house contained a provision that "if the dwelling-house hereby insured shall cease to be occupied as such, then this policy shall cease and be of no more effect." The house was described in the application as occupied by a tenant, and was so occupied at the time of the insurance. The tenant left the house, taking with him all his furniture, about six o'clock on a certain evening, and the house was destroyed by fire about two o'clock the next morning. Held that the non-occupation avoided the policy.

The policy provided that all statements in the application should be "taken to be warranties on the part of the assured." The application contained the following questions and answers: "Q. How many acres of land in the place?" Ans. "Sixty." Q. "What is the value of the land and buildings?" Ans. "Seventeen hundred dollars." Held, that the parties had made these matters material and that they must be so regarded whether they related to the risk or not; and that if the answers were not true in the sense in which they were taken by the parties, there could be no recovery.

ACTION on a policy of fire insurance; brought to the Superior Court in Windham County, and tried to the jury before *Andrews, J.*

Upon the trial the plaintiff offered in evidence the policy of insurance dated June 14th, 1879, by which the defendants insured the dwelling-house of the plaintiff for two years in the sum of $500. The policy referred to the application as "forming a part of this policy." The application stated the value of the house to be $800, and contained the following questions and answers: Q. "How many acres of land in the place?" Ans. "Sixty." Q. "What is the value of the land and buildings?" Ans. "Seventeen hundred dollars." Q. "For what is the house occupied?" Ans. "Dwelling." Q. "By whom?" Ans. "Tenant."

The policy contained the following provisions:

"All statements contained in the application will be taken and deemed to be warranties on the part of the assured."

"If any dwelling-house hereby insured shall cease to be

Bennett v. Agricultural Insurance Co.

occupied as such,  *   *   this policy shall cease and be of no more force or effect."

" In case of loss or damage to any building hereby insured the company is liable for such loss or damage to the whole amount of insurance, provided such amount does not exceed two thirds of the value of the building. But this company shall in no event be liable for more than two thirds the actual cash value of such building at the time of the loss."

It appeared by the evidence that in the spring of the year 1880, one Barber moved into the house, as a tenant of the plaintiff; that the house had then been unoccupied about a month and a half; that Barber moved out with his family and furniture about six o'clock in the evening of August 19th of that year; and that the house was discovered to be on fire and nearly consumed between two and three o'clock of the same night.

The plaintiff offered evidence to prove, and claimed to have proved, that the value of the dwelling house insured was $800; and that of the whole farm $1700; and that there were sixty acres of land in the farm. The defendants offered the evidence of sundry witnesses living in that neighborhood who testified that in their opinion the house insured was of no greater value than from $300 to $500·; and that the value of the whole farm was no more than from $1000 to $1400. They further offered sundry witnesses, one of whom was a surveyor, who testified as to the number of acres in the farm. From their testimony the defendants claimed they had proved that it contained less than fifty acres. They also offered the evidence of sundry witnesses acquainted with the business of insurance, who testified that the risk would be increased by the non-occupancy of a dwelling house situated as the one named in the policy was.

No witnesses were called to prove that the statements in the application as to the value of the whole farm or as to the number of acres it contained related to the risk assumed or that they in any way affected it.

The defendants requested the court to charge the jury as follows:

1. The application being referred to in the policy as forming a part thereof, all the statements contained therein are warranties on the part of the assured.

2. It is of no consequence whether the warranty is material to the risk or not. If untrue there can be no recovery upon the policy.

3. The statements in the application that the value of land and buildings is $1700, and that there were sixty acres of land in the place, are warranties, and if the jury find that the value of the land and buildings, at the time of making the application, was less than $1700, or if the jury find that there were less than sixty acres of land in the place, then there has been a breach of such warranty, and there can be no recovery in this action.

4. By the terms of the policy the insurance thereunder ceased as soon as the house became unoccupied. If the jury find that the house was unoccupied when the fire occurred, then there can be no recovery for the loss.

5. If the jury find that the value of the house, at the time it was insured, was less than $800, the amount stated in the application, then there was a breach of the warranty as to the value of the house, and there can be no recovery in this action.

6. By the terms of the policy the defendants are not liable in any event for more than two-thirds the actual cash value of the building insured, and if the jury find that this value was less than $750 at the time of the fire, then the plaintiff's recovery in this case must be limited to two-thirds of the sum that the jury shall find was the actual cash value of the building.

The judge charged the jury as follows:—

"In this case the application is expressly referred to in the policy, so that the policy is to be read just as though the application, its questions and answers, were copied into it. The statements in the application are warranties, provided they relate to the risk assumed.

" Any statement relates to the risk assumed when it defines or in any respect limits it. In other words, a statement relates to the risk when the jury can see that if the statement had been different the contract whereby the risk is assumed would, in all probability, have been different or never have been made at all. A statement that relates to a collateral matter, or one that relates to some mere trivial thing or to some outside circumstance, or one that is introduced into the policy for some other purpose than to define or limit the risk, would not be a warranty. If a statement in fact relates to the risk, whether it affects the risk little or much, it is a warranty.

" If you find that the statement of the value of the land at $1700, or of the number of acres at sixty, or either of them is false, and that they or either of them related to the risk as above stated, then there can be no recovery by the plaintiff.

" This presents two questions for the jury. Were the statements false? and second, did they relate to the risk? In respect to the land, in deciding the question of value, you will remember that values are always liable to fluctuation and depend largely on the character and opinion of men. There was no undertaking that this farm should always be worth $1700, nor was there any undertaking that any or all of the people of the town where it is situated should be of the opinion that it was worth so much. A man might own a horse of superior speed and blood which he believed to be worth $1000; another man might regard the horse as worth only $500, and still another only $300 or $100, and all of these men be equally honest. The owner of such a horse if he wished to insure it would be likely to state the value at his own estimate. And it would be hardly just to say that he was guilty of a false warranty when the other men came into court and stated that in their opinion the horse was of much less value than the $1000. You will inquire whether, in answering the question, Mr. Bennett told the truth. Did he speak honestly or did he tell a lie? Was the land worth to him at that time,

according to his honest judgment, $1700 ? If he answered the question according to his best judgment and belief, if there was no intentional over-valuation, then in the opinion of the court there was no falsity in the answer.

"In respect to the quantity of land substantially the same rule may be applied. Was there any over-statement as to acreage? Did Mr. Bennett speak falsely, or did he tell the truth when he made the answer? It is for you to decide. If he told the truth then there was no falsity in this behalf.

"If there was no falsehood in these statements, then the other question does not arise. If on the other hand you find that either of the statements—that is, in respect to the value or quantity of land—was intentionally made too large, then you will inquire whether they related to the risk, applying the test that I have already given you, and if you find that these answers, or either of them, did relate to the risk, then there can be no recovery.

"If the house had ceased to be occupied within the meaning of the policy, that defeats a recovery by the plaintiff. In this connection you will keep in mind that in the application it is stated that the house is to be occupied by a tenant, and this clause of the policy should be construed according to the ordinary usages of a tenant house. There was no contract, expressed or implied, that there should be no change of tenants while the policy was in force. On the contrary such changes are so frequent that they must have been contemplated as probable. During the time between the retiring of one tenant and the incoming of another, there may be a vacancy which may continue for a longer or a shorter time, and may exist in spite of the landlord's best efforts to prevent it. Now we can hardly suppose that the parties intended that any such vacancy, however short, would avoid the policy. Such a construction seems to us unreasonably straight. The inconvenience of such a construction is a strong argument against it. It accords better with the probable intention of the parties to hold that such a vacancy does not *ipso facto* avoid the policy. Applying this rule, if you find the house had ceased to be occupied, your verdict should be for the defendants.

" The total amount the defendants can be made to pay is $500. The defendants only agreed to pay two-thirds of the cash value, not exceeding $500. So you will inquire what was the cash value of this house at the time of the fire, and then find two-thirds of such sum. And this will be the amount the plaintiff is entitled to receive if it does not exceed $500. If the two-thirds exceed $500, it will be your duty to return a verdict for only $500, with interest thereon from two months after the proof of loss."

The jury returned a verdict for the plaintiff, and the defendants appealed the case to this court on the ground that the judge had erred in his charge to the jury and in refusing to charge as requested.

*J. L. Hunter* and *A. H. Sawyer*, for the defendants.

1. The application is referred to in the policy as *forming a part thereof*. By the express terms of the policy " all statements contained in the application will be taken and deemed to be *warranties on the part of the assured.*" The statements therefore in the application that the value of the dwelling-house was $800; that there were sixty acres of land in the place; and that the value of the land and buildings was $1700—were express warranties on the part of the plaintiff.  Angell on Ins., §§ 140, 141; May on Ins., § 156; *Glendale Manf. Co.* v. *Protection Ins. Co.*, 21 Conn., 19; *Kelsey* v. *Universal Life Ins. Co.*, 35 id., 237; *Chase* v. *Hamilton Ins. Co.*, 20 N. York, 57; *Ripley* v. *Ætna Ins. Co.*, 30 id., 136, 163; *Rohrbach* v. *Germania Ins. Co.*, 62 id., 61; *Graham* v. *Fireman's Ins. Co.*, 87 id., 69.

2. The statements in the application as to value and number of acres being warranties, and being in the nature of conditions precedent, they must be literally true, or there could be no recovery upon the policy. It is of no consequence whether they were material or not, or for what purpose or with what view they were made, or whether the assured had any view at all in making them.  Marshall on Ins., 249; May on Ins., § 156; *Duncan* v. *Sun Ins. Co.*, 6 Wend., 488; *Chase* v. *Hamilton Ins. Co.*, 20 N. York, 57;

*Ripley* v. *Ætna Ins. Co.*, 30 id., 163; *Boyce* v. *Lorillard Ins. Co.*, 55 id., 244; *Rohrbach* v. *Germania Ins. Co.*, 62 id., 62; *Graham* v. *Fireman's Ins. Co.*, 87 id., 74; *Wood* v. *Hartford Fire Ins. Co.*, 13 Conn., 544.

3. The statements in the application as to the value and the number of acres were made in answer to specific inquiries in the application. In such cases the question of the materiality of the statement, in respect to the risk, is settled by the parties as a matter of contract. A broad distinction exists between statements made in answer to inquiries and those made otherwise. In the one case the answers are made material by the act of the assured, whether they are in fact or not, while in the other case, even though the statements are made a part of the policy, they are not efficacious as warranties, although material in fact. Wood on Ins., 422; *Graham* v. *Fireman's Ins. Co.*, 87 N. York, 77; *Davenport* v. *N. E. Ins. Co.*, 6 Cush., 340; *Draper* v. *Charter Oak Ins. Co.*, 2 Allen, 569.

4. These statements were material warranties, aside from the fact that the parties have made them so by their contract. It was necessary that the defendant should be advised, by the application, of the real value of the dwelling-house, in order that it might not insure more than two-thirds its value. It was equally necessary that it should be advised of the number of acres of land in the place, and the real value of the entire property, land and buildings, in order that it should not make an insurance upon buildings equal to the amount of the real interest of the assured in the property, ascertained by deducting from its cash value the amount of all incumbrances thereon. For example: The incumbrance upon this property was stated to be $800. If the entire property, land and buildings, was worth but $1000, as several of the witnesses stated, then the entire interest of the assured in the property could not exceed $200, and the defendants could not safely, and would not, have placed any insurance whatever upon the building. The answers made to these questions, it will be readily seen, not only related to the risk, but were material thereto.

In this case they were especially so because the property was situated in another state; the agent of the defendants, through whom the insurance was effected, had, as appears by the application, made no personal examination of the property, and the company, in issuing the policy, relied entirely upon the statements made by the plaintiff.

5. The plaintiff was bound to know what the application contained, and to know that its statements were correct. *Ryan* v. *World Mutual Life Ins. Co.*, 41 Conn., 172. The court below erred in instructing the jury that if there was no intentional over-valuation of the property, and no intentional mis-statements in regard to the number of acres, then there had been no breach of warranty. The judge seemed to have entirely misapprehended the nature and effect of a *warranty*, and to have regarded it as necessary for the defendants, in order to show a breach of warranty, to make proof that would convict the plaintiff of a fraud; and the jury must have so understood his instructions.

6. The policy contained a condition rendering it void if the dwelling-house insured should cease to be occupied as such. The proof showed that the house was unoccupied about a month and a half in the spring of 1880, that it was thereafter again occupied, and that the tenant moved out about six in the evening on the day preceding the fire, and that the house remained unoccupied until it was destroyed by fire about two o'clock the next morning. This was clearly a violation of this condition of the policy. By the terms of the policy the insurance ceased immediately upon the dwelling-house becoming unoccupied, and it was of no consequence how long it had remained unoccupied, or whether such vacancy was a reasonable one. "The court can not make a contract for the parties, or give to that made any other or different effect than its just interpretation warrants, however unjust or inequitable such condition may appear. Thus, where a policy provides that, in case at any time during the existence of the policy the premises shall be unoccupied, the policy shall thereby become void, if the premises are vacant for *one day* the policy becomes void,

and a subsequent loss can not be recovered." Wood on
Ins., 551; see also *Sonneborn* v. *Manufacturers' Ins. Co.*, 44
N. Jer. Law, 220; *Paine* v. *Agricultural Ins. Co.*, 5 N. York
Sup. Ct. R. (T. & C.), 619; *Thayer* v. *Agricultural Ins. Co.*,
5 Hun, 566; *Whitney* v. *Black River Ins. Co.*, 9 id., 41;
*Abrams* v. *Agricultural Ins. Co.*, 40 U. Canada Q. B., 175;
*Ætna Ins. Co.* v. *Meyers*, 63 Ind., 238; *Dennison* v. *Phœnix
Ins. Co.*, 52 Iowa, 457; *McClure* v. *Watertown Fire Ins. Co.*,
90 Penn. St., 277; *Herrman* v. *Adriatic Ins. Co.*, 85 N. York,
162; *Cook* v. *Continental Ins. Co.*, 70 Misso., 610; *American
Ins. Co.* v. *Padfield*, 78 Ill., 167; *Keith* v. *Quincy Ins. Co.*,
10 Allen, 228; *Ashworth* v. *Builders' Ins. Co.*, 112 Mass.,
422; *Franklin Savings Inst.* v. *Central Ins. Co.*, 119 id., 240;
*Corrigan* v. *Connecticut Ins. Co.*, 122 id., 298.

*T. M. Maltbie*, with whom was *C. H. Briscoe*, for the
plaintiff.

1. The provision of the policy with reference to non-
occupation of the premises is as follows:—" If any dwelling
house hereby insured shall cease to be occupied as such,
this policy shall cease, and be of no more force or effect."
This clause evidently refers to a change from the use of the
premises as a dwelling house, or to an intentional abandon-
ment of it for that purpose, continued for some considerable
time. Any vacancy that was incidental to its occupation
as a tenant house, and evidenced no purpose to change its
use or abandon it for that purpose, would not work a for-
feiture of the policy. A mere surrender of one tenant,
without the entry of another, is not such a change or non-
occupation as is contemplated by the policy. May on Ins.,
§§ 247, 248, 249, and cases there cited. The whole question
of occupancy was submitted to the jury, as requested by
the defendants. The court instructed the jury that "if the
house had ceased to be occupied within the meaning of the
policy, that would defeat a recovery by the plaintiff," and in
the same connection read to the jury from the opinion of
this court in *Lockwood* v. *Middlesex Mut. Assurance Co.*, 47
Conn., 553, 561. In view of the circumstances and of the

very reasonable doubt as to whether the fire did not originate during occupancy by the tenant, the charge was more favorable than the defendants were entitled to. *Lounsbury* v. *Protection Ins. Co.,* 8 Conn., 459; *Hough* v. *City Fire Ins. Co.,* 29 id., 11; *Boon* v. *Ætna Ins. Co.,* 40 id., 586.

2. The court instructed the jury with reference to warranty substantially as the defendants requested. The only qualification was that statements in the application, in order to be warranties, must relate to the risk assumed. The general rule in regard to what constitutes a warranty in a contract of insurance is well settled. "Any statement or description or any undertaking on the part of the insured, on the face of the policy, *which relates to the risk,* is a warranty. Whether a fact, quality or circumstance specified relates to the risk or is inserted for some other purpose, must be settled before the rule can be applied." *Wood* v. *Hartford Fire Ins. Co.,* 13 Conn., 533. See also *Billings* v. *Tolland Mutual Fire Ins. Co.,* 20 Conn., 139; *Glendale Manf. Co.* v. *Protection Ins. Co.,* 21 id., 34; *Sheldon* v. *Hartford Fire Ins. Co.,* 22 id., 244. The representations in the application, which were made an issue in the trial below, relate solely to the value of the property insured and the quantity of land in the farm. If the applicant regarded the property as of the value stated, there would be no breach of the warranty, although other people differed with him as to the valuation, and placed a less one upon it. It cannot be the intent of the insurer that the insured shall by investigation determine the value of his property, but the purpose must be to ascertain his opinion of its value. All the insured is required to do is to give an honest valuation. The court laid down a rule with reference to such valuations, which correctly stated the law, and was as applicable to the value of the house burned as to the value of the entire farm. The jury must have found the house worth at least $750, and in so finding found that the plaintiff's valuation of it at $800 was substantially correct. The same rule applies with reference to the quantity of land in the farm. This question had no relation to the risk assumed.

But in any event the insured is only required to give his honest opinion, and not to ascertain accurately by survey or otherwise the exact quantity of land. Upon these points questions at issue were fairly submitted to the jury.

3. A new trial will never be granted unless the court can see that injustice either was, or might have been, done on the former trial. This rule is so well established and has been so often applied by this court, that a citation of authorities in support of it is wholly unnecessary. It is manifest that the verdict here is strictly in accordance with justice.

CARPENTER, J. This is an action on a fire insurance policy. The building insured was a dwelling house occupied by a tenant. The answer interposed several defences which will be separately noticed. The plaintiff had a verdict and the defendant appealed.

1. That the house was unoccupied at the time of the fire.

The policy provides that if "the dwelling house hereby insured shall cease to be occupied as such, then this policy shall cease and be of no more force or effect." The finding shows that the tenant left the house, taking with him all his furniture, about six o'clock in the evening. The next morning about two o'clock the house was destroyed by fire.

The defendant requested the court to instruct the jury as follows:—"By the terms of the policy the insurance thereunder ceased as soon as the house became unoccupied. If the jury find that the house was unoccupied when the fire occurred, then there can be no recovery for the loss."

The court did not so charge the jury, but instructed them as follows:—"If the house had ceased to be occupied within the meaning of the policy, that defeats a recovery by the plaintiff." After reciting the language of the policy, the court proceeded as follows:—"In this connection you will keep in mind that in the application it is stated that the house is to be occupied by a tenant, and this clause of the policy should be construed according to the ordinary usages of a tenant house. In this case the building was insured to

Bennett *v.* Agricultural Insurance Co.

be occupied by tenants, and is so expressed in the policy. There was no contract, expressed or implied, that there should be no change of tenants while the policy was in force. On the contrary such changes are so frequent that they must have been contemplated as probable. During the time between the retiring of one tenant and the incoming of another, there may be a vacancy which may continue for a longer or shorter time, and may exist in spite of the landlord's best efforts to prevent it. Now we can hardly suppose that the parties intended that any such vacancy, however short, would avoid the policy. Such a construction seems to us unreasonably straight. The inconvenience of such a construction is a strong argument against it. It accords best with the probable intention of the parties to hold that such a vacancy does not *ipso facto* avoid the policy. Applying the rule as here laid down, if you find the house had ceased to be occupied, your verdict should be for the defendants."

It will be observed that the court in its charge used the language of this court in *Lockwood* v. *Middlesex Mutual Assurance Co.*, 47 Conn., 553. It is manifest that the court overlooked an important distinction between that case and this. In that case there was no provision, as there is in this, that non-occupation should avoid the policy; but the question was whether it increased the risk. The contract was not explicit but was open to construction for the purpose of ascertaining what was the probable intention of the parties. Here they have told us in plain terms what they mean. The contract is neither obscure nor ambiguous, and there is no room for interpretation. The court erred in charging as it did.

It is true that the building burned in a few hours after it was vacated. But under this clause in the policy we are unable to see that time is material. The important question was—was it in fact unoccupied?

The plaintiff contends that the fire probably originated before the premises were vacated. Conceding that to be an important inquiry, it was a question of fact for the jury and

Bennett v. Agricultural Insurance Co.

not of law for this court. We cannot assume the fact to be as claimed, nor that the jury necessarily found it to be so, as the question was not made in the court below.

2.   That there was a breach of the warranties contained in the policy.

A clause in the policy reads thus:—"All applications for insurance must be made in writing, and signed by the applicant or by his authority, and all statements contained in the application will be taken and deemed to be warranties on the part of the assured."

The application contained the following questions and answers:—*Quest.* "How many acres of land in the place?" *Ans.* "Sixty." *Quest.* "What is the value of land and buildings?" *Ans.* "Seventeen hundred dollars."

The defendant requested the court to charge the jury as follows:—"1. The application being referred to in the policy as forming a part thereof, all the statements contained therein are warranties on the part of the assured. 2. It is of no consequence whether the warranty is material to the risk or not. If untrue there can be no recovery upon this policy."

The court did not so charge, but charged that the "statements in the application are warranties, provided they relate to the risk assumed," and then submitted to the jury two questions:—(1) Did the statements relate to the risk? and (2) were they untrue?

In this too the court erred. The parties made these matters material, and they must be so regarded whether they related to the risk or not. The only proper question for the jury was whether they were true. If they were not true there was a breach of the warranty and there can be no recovery. If they were true in the sense in which the parties understood them then there was no breach.

A new trial is advised.

In this opinion the other judges concurred.