## HELD AT HARTFORD, FOR THE COUNTIES OF HARTFORD, WINDHAM, MIDDLESEX, LITCHFIELD AND TOLLAND,

ON THE FIRST TUESDAY OF JANUARY, 1884.

Present,

PARK, C. J., CARPENTER, PARDEE, LOOMIS AND GRANGER, Js.

BENJAMIN F. BENNETT *vs.* THE AGRICULTURAL INSUR- SURANCE COMPANY.

A policy of fire insurance provided that all statements in the application should "be taken to be warranties on the part of the assured." The application contained the following, among other questions and answers : Q. "How many acres of land in the place ?" *Ans.* "Sixty." Q. "What is the value of the land and buildings ?" *Ans.* "Seventeen hundred dollars." In a suit on the policy the court instructed the jury that these representations were warranties to be strictly proved, but only in the sense in which the parties understood them, and submitted to them the question whether, in the sense in which they were understood, the answers were assertions of a fact, or merely the expressions of an opinion. Held to be error, since, the representations being wholly in writing, and there being no ambiguity requiring extrinsic evidence, the question as to their construction was one wholly for the court.

The insurance was upon a dwelling-house and the policy contained a provision that "if the dwelling-house hereby insured shall cease to be occupied as such, then this policy shall cease and be of no effect." The house was described in the application as occupied by a tenant, and was so occupied at the time of the insurance. The tenant removed from the house about six o'clock on a certain evening, and the house was destroyed by fire about two o'clock the next morning. Held that the policy was not saved by the fact that the fire had actually commenced and was smouldering unobserved when the tenant moved out.

The refusal of a court to grant a motion for a non-suit is not reviewable on application of the defendant. He can only go on with the trial and submit his case to the jury.

·[Argued January 2d,—decided January 25th, 1884.]

ACTION on a policy of fire insurance; brought to the Superior Court in Windham County, and tried to the jury before *Stoddard, J.* Verdict for the plaintiff, and appeal by the defendants for error in the rulings and charge of the court. The points decided will be sufficiently understood without a statement of the facts. The same case was before this court at a former term, (50 Conn., 420,) and the facts are fully stated in the report then given.

*J. L. Hunter* and *A. H. Sawyer*, for the appellants.

*C. H. Briscoe* and *T. M. Maltbie*, for the appellee.

LOOMIS, J. When this case was before this court at its January term, 1883, it was a prominent contention whether certain statements made by the plaintiff in his application for insurance were warranties or representations. 50 Conn., 420.

The Superior Court held that they were warranties provided they related to the risk, but in submitting to the jury as the two controlling points, that the statements must be found intentionally false and must also relate to the risk, overlooked the usual distinction made between warranties and representations, which is that the former are to be literally and exactly fulfilled, whether material to the risk or not and whether honestly made or not, while representations even if material to the risk need only be substantially accurate. May on Insurance, §§ 183, 184.

This court, recognizing the right of the parties to determine for themselves upon what conditions the validity of their contract should depend, and finding in this case that they had expressly stipulated that "all statements contained in the application will be taken and deemed to be warranties on the part of the assured," and not being able to lay hold of any inconsistent or ambiguous provisions in

order to reach a different conclusion by construction, was constrained to hold the statements to be express warranties, requiring exact compliance.    And so far the contention between the parties was then settled.  But the terms of the warranty do not seem to have been settled.  Upon the re-trial of the case the court told the jury that the statements as to the value of the house and the number of acres of land belonging to the place were warranties to be strictly proved, but only in the sense in which the parties understood them. In justice to the presiding judge of the court below it should be stated that this court is responsible for the quali-fication of the warranty contained in the charge, the same language having been used in the opinion in 50 Conn., 432, *supra*.  The qualification was of course true, for the par-ties can determine for themselves not only whether there shall be any warranty, but what it shall be.

The difficulty now presented arises from the fact that the court, instead of telling the jury what the warranty was, asked them to determine it, and to decide whether the statements asserted a fact or merely gave an opinion.  The warranty was wholly in writing, and consequently its con-struction was a question of law exclusively for the court.

It is not pretended that there was evidence of any kind raising an ambiguity which called for extrinsic explanatory evidence to be submitted to the jury.  It was not even a case of inconsistent provisions relative to the warranty—one part explaining or modifying the language of another, as in *Fitch* v. *American Life Ins. Co.*, 59 N. York, 557, and if it had been it would still have remained a question of law for the court to determine.  It was therefore erroneous to leave the question for the determination of the jury.

But it may be suggested that the questions of the con-struction of the warranty were submitted to the jury in such a way as that it will appear that no harm was done the defendant.  If it appeared that the statements in ques-tion were found true, we might infer perhaps that the jury rightly construed the contract, and if otherwise the error would be harmless.

Bennett *v.* Agricultural Ins. Co.

As to the value of the house there is no direct finding. Reasoning from the amount of the verdict, and that under the limitation in the policy and under the charge of the court it could not have exceeded two thirds the value of the house destroyed, we infer that the statement that the value was eight hundred dollars may have been found true. Although the refusal of the court to charge the jury as requested by the defendant in this regard is alleged as one of the grounds of appeal, yet the counsel for the defendant in their oral argument before this court stated that they did not claim a new trial on this ground. This part of the warranty may therefore be left out of the discussion.

But as to the quantity of land in the place, we can find no clue from which to ascertain the opinion or finding of the jury—only that the defendant claimed that there were only forty-six and three quarters acres, which if found could hardly be considered even as substantially sixty acres.

There is nothing here to show that no harm was done the defendant, and if the charge was such that under it the jury may have misconstrued the contract, a new trial must be given. The following extract embodies the substance of the charge:—"In considering the nature of this statement relative to the value of the house you will look at the position of the parties and take into view the entire contract between them; and you will consider the business they had in hand; you will regard the thing the parties were trying to accomplish by the use of the language employed; and by regarding all the surrounding circumstances and the words used, you will determine to what extent this statement of the value of the house was understood to be a mere expression of opinion. In whatever sense the language was used and understood by the parties, it must be true or the plaintiff cannot recover. The same rule applies to the statement in reference to the quantity of land. Was that statement understood to be a statement of fact or an expression of opinion? If it was understood to be a statement of a fact, to wit, that there was precisely sixty acres and no less in the place, the law is so that the

statement must be literally true ; and if not true, there can be no recovery. If the statement was understood to be a statement of the plaintiff's opinion of the number of acres and that there was substantially sixty acres in the place, then it is necessary for the plaintiff to satisfy you that such statement was true and that such was his opinion, and that there was substantially sixty acres in the place."

If we regard the charge as submitting exclusively to the jury the right to determine in what sense the language was used, (and such would seem to be its purport,) we have no assurance at all that the right construction was adopted. And even if we take the most favorable view for the plaintiff that is possible, as we are inclined to do for the purposes of this case, and hold that all the comments and remarks of the judge are to be regarded as instructing the jury that in construing the contract they must adopt one of two alternatives, either that the statement was the warranty of a fact to be strictly proved, or on the other hand, the warranty of a mere opinion to be proved only in substance, we think it was erroneous as to the latter alternative.

In the first place, the parties having expressly stipulated and intended to make all the statements in the application technical warranties rather than representations, it must be presumed that the assured weighed his words more carefully and made statements of fact rather than of mere opinion, unless he uses words indicating that he is making a mere estimate or giving his opinion. Otherwise the object of the express stipulation of warranty would be utterly defeated and the words would be virtually erased by construction. The several questions in the application by the side of the one as to the number of acres, manifestly call upon the assured to give facts and not his opinion ; such as the occupation of the house—the number and condition of the chimneys—whether the stove pipes pass through floors and partitions—whether any pipe enters the chimney in the attic—whether he has ever had a fire ; and the question as to other insurance—amount of incumbrance, etc. In this

case the question is, "how many acres of land in the place?" not how many it was estimated or believed to contain.

But it was argued that the subject-matter of the inquiry would be understood as calling for an opinion merely, or at most for substantial accuracy. No one would so understand the language if employed in a deed of warranty. But it should be borne in mind that the parties here have bound themselves by a strict technical warranty; why then should it be construed so differently? We cannot accept the claim that there is anything in the subject-matter that must be understood as calling for opinion. Indeed the number of acres contained in a farm as large as this could never be shown by the opinion of witnesses. Such a proceeding in court would be ridiculous, as the wildest kind of guessing. The subject-matter is more definite and certain than most facts which are put in issue in court and which are established by moral evidence merely. This fact was capable of mathematical demonstration. But it may be suggested that the assured could not have been expected to procure a surveyor to enable him to answer the question. Very true; but it is very common for land-owners to have in their possession the record of an actual survey, and if the assured did not know the quantity of land it was most natural and very easy to answer by estimation, so that if the defendant wanted more accurate information it could have been obtained.

There is one other ground for appeal which we consider well taken, which is that the court in charging the jury ought to have complied substantially with the defendant's seventh request, which was as follows:—

" The evidence upon the part of the defendant shows that the family who had occupied the house for some time prior to the fire, moved out of the house at six o'clock in the afternoon of the day preceding the fire, leaving the house unoccupied. The burden was then upon the plaintiff to show that after this time the house became again occupied and that some person was living therein at the time of the fire; and this he has failed to do."

It cannot be said that the request was based upon evidence which did not exist, for the court finds expressly that " all of the requests to charge were based upon evidence in the case."

The only, charge, referring to this subject was, that " the burden of proof as to the non-occupancy of the building at the time of its destruction is upon the defendant, and the defendant must show that the fire commenced to destroy it while the building was unoccupied. Occupation of a dwelling-house is living in it. If the jury find from the evidence that no person was living in the house when it commenced to burn, then it was unoccupied within the meaning of the policy."

The charge, by ignoring entirely, the point of the defendant's request, was in effect a denial of its correctness. It was proper enough to state generally that the burden of proof was on the defendant to show non-occupation. This was not controverted. The defendant had assumed it and had introduced evidence raising a presumption of non-occupancy at the time of the fire, which it was entitled to the benefit of.

The rule invoked in behalf of the defendant, that when a personal relation, or state of things, is once established, the law presumes that it continues to exist until the contrary is shown, is too well settled to require discussion. 1 Greenleaf on Evidence, §§ 41, 42; 2 Wharton on Evidence, §§ 1284–1289; Donahue v. Coleman, 49 Conn., 464.

But the counsel for the plaintiff, while accepting the rule, deny its application, because they say the defendant's evidence failed to show precisely when the fire actually commenced, and that it might have been smouldering unobserved for a considerable time before the tenant's removal; and the argument in substance is, that the presumption relied upon must look forward not backward, and that the non-occupancy shown must therefore ante-date the fire, not the fire the non-occupation, in order to have the effect claimed.

There is nothing in the record that justifies the making of such a claim. On the contrary, referring to the statement of the evidence upon which the defendant's request

was based, we find that "the family moved out of the house at six o'clock in the afternoon of the day *preceding the fire*, "leaving the house unoccupied." The existence of evidence to show these facts is certified by the court, and this presents all the facts of the case for the purposes of this review. It would seem clear, therefore, that the non-occupation shown did ante-date the fire, and that therefore the defendant was clearly within the rule.

But the charge to the jury in express terms made the very commencement of the fire the critical time in respect to the fact of non-occupation, and this, in connection with the ingenious speculation and suggestions of the plaintiff's counsel as to the probable origin of the fire, may have proved decisive of this point. It is proper, therefore, if not positively required, that we meet the question directly. It is an interesting and important one, and so far as we are aware of novel impression.

The question is this:—Suppose the occupant of an insured dwelling, under a policy which becomes void upon non-occupation, removes and leaves the house vacant at a time when no fire has manifested its presence to any observer, but it only becomes manifest the next day after such removal, does the fact that the fire was smouldering unobserved at the time of removal prevent a forfeiture? We are constrained to answer in the negative.

The proposition is of course indisputable that a suit on a policy cannot be defeated for non-occupation after the loss has occurred for which the suit is brought. But when does the loss occur? Is it the instant the very first fibre of the building has been touched by the smouldering fire, or when the work of destruction in whole or in part has been consummated? The operation of the covenant in question is co-extensive in duration with the covenant of indemnity to the assured—both cover the entire loss by the fire, which in all its stages is but one event.

The object of the provision in the policy requiring occupation of the house as a pre-requisite to recover for the loss, is not solely on account of the greater danger of vacant

buildings being fired by incendiaries, but also because the presence of an interested occupant who can easily put out a fire in its incipient stages, is a very great security against loss.

That this was one prominent object of the non-occupation covenant in this case is further evidenced by another provision in the policy in suit, namely:—" In case of fire, or exposure to loss or damage thereby, the assured shall use their best endeavors to save and protect the property, both at and after the fire, and the company shall not be liable for any loss sustained in consequence of neglect so to do." This not only assumes that the assured is to be an interested occupant during all the time and therefore present, but puts upon him a positive duty which abides with him during all the time the fire is progressing and even when it has finished its work of destruction.

As to the other alleged grounds of error, we think under the circumstances that the rulings of the court were correct. A very brief reference to these points will suffice.

The refusal of the court to grant the motion for nonsuit, being matter committed to the discretion of the court, is not reviewable on application of the defendant. The practice in Connecticut, unlike that of some other states, is regulated by statute. Gen. Statutes, p. 443, sects. 3, 4. This statute provides for a non-suit, not when all the evidence on both sides has been received, but when the plaintiff on his part has submitted his evidence and rested. If the court shall be of opinion that a *primâ facie* case is not made out, the court may (not must) grant a non-suit. If granted the plaintiff has his remedy; if refused the defendant has no remedy on that account, but must go on with the trial and submit the case to the jury, either on the plaintiff's evidence alone, if he chooses, or upon his own evidence as well; and unless he unfortunately supplies on his part some defects which he discovers in the plaintiff's case, he can take advantage of these defects through requests made to the court to charge the jury and by a motion for a new trial for a verdict against evidence, if the court will certify the evidence.

The ruling refusing to allow the defendant to introduce evidence of the value of the whole premises, land and buildings, at first occasioned some hesitation. But upon a more careful examination of the defendant's answer it became apparent that the intention was to make it very explicit as to the precise points of defense; so that on the whole we think the court was justified in giving a more strict construction to the language than would be proper under other circumstances. One ground of defense in the amended answer is, that the defendant said the place contained sixty acres, whereas in truth there were but forty-six and three-quarters acres. Under the head of second defense, the allegation is in terms, "misrepresentation as to the value of the property insured." The only property insured was the dwelling-house. Upon referring to the application the statement is in this order—"dwelling-house and attachments"—"amount insured, $500"—"value of buildings"—"dwelling, $800." There can be but little doubt that the allegation in the answer referred simply to the last mentioned representation, that the value of the dwelling was $800. There is in the application a third statement, distinct and separate from the other two, that "the value of the land and buildings" is $1700. This point seems to have been entirely omitted in the pleadings.

There was error in the rulings complained of, and a new trial is ordered.

In this opinion the other judges concurred.