<hr/>

THE HOME INSURANCE COMPANY OF NEW YORK v. WILLIAM WOOD.

1. TRIAL — *Complete Record.* The record in this case examined, and *held*, that it affirmatively shows that it contains all the proceedings, evidence and instructions in the case, as tried in the court below.

2. INSTRUCTIONS — *No Error.* The instructions given and the instructions refused examined, and *held*, that the court committed no error in giving or refusing instructions.

3. FINDINGS, *Supported.* The evidence examined, and *held* to support the findings of the jury.

*Error from Rice District Court.*

THE facts are stated in the opinion. Judgment for plaintiff, *Wood*, at the July term, 1889. The defendant *Insurance Company* comes to this court.

*A. M. Lasley*, for plaintiff in error.

*C. F. Foley*, for defendant in error.

Opinion by STRANG, C.: March 10, 1887, the plaintiff company issued its policy of insurance to the defendant, agreeing to indemnify him against loss or damage by fire in the sum of $1,000 — $500 on his dwelling, and $500 on household goods and other things therein, for the period of one year. January 8, 1888, the property was totally destroyed by fire. The company refused to pay the damages sustained by said loss, and on the 12th day of April, 1888, this suit was brought to recover for the loss sustained under said policy. The execution and delivery of the policy were admitted. The defendant in answer claimed, first, that the policy was void *ab initio* because of the fact that there were certain incumbrances in the form of mortgages upon the land before and at the time the policy was issued, and that the existence of said mortgages was not disclosed to the company, nor its agent, when said insurance was obtained; second, that there was at the time such insurance was obtained other insurance on said property, the existence of which was not disclosed to the company, nor to its agent; third, that the company was not liable because, in violation of a condition of the policy, the house was unoccupied when consumed by fire. The first of these propositions the plaintiff in error abandons in its brief, and says it will consider only the second and third of these questions. The case was tried by the court and a jury, and a verdict returned for the plaintiff below, in the sum of $1,056.75. The jury also made the following special findings:

"1. When was the building referred to in the petition in this case burned? Ans. On the 8th day of January, 1888.

"2. How long after said building was burned before plaintiff made proof of loss, if any was made, to defendant? A. On the 17th day of January, 1888.

"3. When did the plaintiff make his proof of loss in this case, if any was made? A. Same as above mentioned.

"4. When did the proof of loss in this case reach the office of defendant in the city of New York? A. If it has been proved, don't know.

"5. What did the proof of loss, if any was made in this

case, consist of? A. Statement made to defendant's adjusting agent.

"6. Was there any other insurance on the building referred to in the petition in this case at the time the defendant in this action issued its policy? A. Yes.

"7. On the day the defendant in this case issued its policy of insurance, did it know of the existence of any other policy of insurance on the property insured? A. Yes.

"8. On the day the policy was issued by the defendant in this case, did its agent Johnson actually know that there was a mortgage on the property covered by the policy and that the same was not paid? A. Yes.

"9. By whom and how was the building referred to in this case occupied at the time it was burned? A. By the plaintiff.

"10. Where was the family of the plaintiff residing at the time the building referred to in this case was burned? A. In said building; temporarily absent at the time it was burned.

"11. Where was the plaintiff sleeping and taking his meals at the time the building referred to was burned? A. At Mr. Ford's, in Sterling, Kas.

"12. Who had the key to the building referred to in this action and the possession thereof at the time the same was burned? A. Mr. Alfon had the key to the second room from the west, on the north side.

"13. What was the building in this action referred to worth at the time it was burned—that is, what was its market value? A. $1,300.

"14. Was there any of the property described in the policy of insurance in this case that was not in the building at the time the same was burned? If so, what was it? A. Yes; one sewing machine.

"15. How much, if anything, do you allow for the loss of the building, if any, to the plaintiff? A. $500, with interest at the rate of 7 per cent. per annum from the 17th day of March, 1888.

"16. How much, if anything, do you allow for the other articles mentioned in the policy (outside of the sum, if any, allowed for the loss of the building)? Give each item separately. A. $500, with interest at the rate of 7 per cent. per annum from the 17th day of March, 1888, on the following articles, to wit:

"1 organ, 12 chairs, 1 parlor set (parlor bed-room) and bedding, 3 bed-room sets, 60 yards of carpet, wearing apparel, 1 cook stove, 1

parlor stove, 1 bed-room stove, 1 dining-room table, 1 breakfast table, cupboard ware.

"17. Was there more than one mortgage on the house referred to in the petition, at the time the defendant issued its policy of insurance on the building? If so, did defendant have any knowledge of both of them at the time it issued its said policy? A. Yes.

"18. Was there any waiver of proof of loss by the defendant in this action? If so, by whom was such proof waived, and when? A. Yes; to wit, on the 17th day of January, 1888, by the defendant's adjusting agent.

"19. If you answer the last question 'yes,' then state what such waiver consisted of. A. By the actions of the defendant's adjusting agent."

The first question raised in this case is one of practice. It is alleged that there is no case in this court, because the case-made does not show that it contains all the pleadings, proceedings, evidence, and instructions. It is held by this court that the case-made must affirmatively show that it contains all the pleadings, proceedings, evidence, and instructions, when all of these things are to be reviewed in this court. We think the case before us does affirmatively show that it contains all the evidence and instructions and other matters to be reviewed in this court. While it is the better practice to incorporate a direct statement in the body of the case-made, showing that it contains all of the matters to be reviewed here, yet it will be retained and reviewed by this court if it otherwise sufficiently shows that it contains everything to be reviewed in this court.

The first contention of counsel for plaintiff herein is, that there was other insurance on the property included in the policy sued on in this case when this policy was issued, and that the existence of such other insurance was not disclosed to the company nor its agent at the time the insurance in this policy was applied for. The company says that because the existence of such other insurance was not disclosed this policy was void. The jury found that the company knew of the existence of the other insurance when it issued the policy sued on. It is contended, however, that this finding of the jury is not supported by sufficient evidence, if it is supported by

any evidence. The other insurance complained of was in the Hartford Insurance Company, and it is admitted that the application for such insurance was taken and the policy therein countersigned by Mr. Johnson, the same agent who took the application and countersigned the policy issued by the plaintiff in error in this case, and that but a few weeks intervened between the dates of such policies. Mr. Johnson, the agent, testifies that, at the time he took the application for the policy sued on, he had forgotten the fact of having insured the same property only a few weeks before in another company, and that his attention was not called to such former insurance when the latter insurance was taken. Turning to the evidence of Mr. Wood, we find that he says the agent had knowledge of the former insurance; that when the first insurance was taken, the agent told him the property would bear other insurance; that afterward he met the agent on the street, and the agent asked him if he was not ready to take some additional insurance on his property, adding that he had several companies then, and could write him some more insurance on his property. Wood inquired what it would cost, and the agent told him he would go down to the office and see. Afterward, and without any further application on the part of Wood, the policy sued on was issued and delivered to Wood by Mr. Johnson. We think this evidence of Mr. Wood sufficient to support a finding that the company by its agent, Johnson, knew at the time it issued its policy of the other and former policy in the Hartford company on the same property.

The next contention of the plaintiff company is, that the house was permitted to become unoccupied, and was unoccupied when destroyed. Upon this question the jury found against the company, and say the house was occupied when consumed. Counsel says this finding is not supported by the evidence, and is against the evidence. We think this is a much closer question than the former one, and yet we think the evidence upon the question as to whether or not the house was occupied at the time of the fire is of such a character that

it should be submitted to a jury, and that the court was right in refusing to instruct the jury as a matter of law, under the evidence, that the house was at the time of the fire unoccupied. The question turns largely upon the intention of the defendant, Wood, and such intention must, in the absence of any express declaration of Wood in relation thereto, be gathered from the circumstances of the case, and its ascertainment, considering the character of the evidence in relation thereto, is, therefore, peculiarly within the province of the jury. The evidence shows that the furniture and household goods were still in the building when the fire occurred, though they were being packed in some of the rooms of the house so as to make vacant other rooms therein; that Wood had slept in the house until within a week or five days of the fire, and then went to Ford's to sleep because he was not well; that he was at the house each day while he slept away, and was there till evening the night of the fire. It also shows that Wood had given a key to a young man named Alfon, who was fixing one of the bed-rooms as a sleeping room for himself; that he had moved his bed and trunk in, but had not yet actually slept there, though he was there the early part of the night of the fire and changed his clothes. While it is not very clear whether or not the house was occupied at the time of the fire, we think the evidence on that point was properly submitted to the jury; and the jury having found that the house was occupied, this court would not be justified in saying the jury were not warranted under the evidence in so finding. There is an allegation of error in connection with the instructions given, and also with respect to the instructions refused. We think the instructions properly voice the law of the case, and cover all the questions raised by the special requests of the defendant.

We therefore recommend that the judgment of the court below be affirmed.

By the Court: It is so ordered.

All the Justices concurring.