EAST TEXAS FIRE INSURANCE COMPANY v. ELIZA KEMPNER.

No. 1447.

**1. Insurance—Premises When Vacant.**

See evidence held to establish the fact that an insured building was not "vacant" nor "unoccupied," and was in "continuous use" within the meaning of the policy.

**2. Insurance—Change of Occupancy.**

A policy which insured certain premises "while occupied as a saddlery and printing office" also provided for avoiding the policy "if the risk be increased by any change in the occupation of the building." Construing the clauses together, they did not avoid the policy by a change in the occupancy not increasing the risk.

**3. Same—Representation or Warranty.**

"Occupied for the following purposes" should be construed as a representation, not as a warranty. If construed as a warranty it was as to the then present condition and not promissory.

**4. Increased Risk—Owner's Knowledege.**

Where a policy was conditioned to be void in case of change increasing the risk within the knowledge of insured, the introduction of a tenant who used a gasoline stove, whereby the risk was increased, but without the owner's knowledge, did not make the policy void.

**5. Temporary Vacancy of Insured Premises.**

See opinion for views of Court of Civil Appeals, on the question whether the temporary vacancy of rented premises incident to a change of tenants is such as to defeat action on a policy of insurance, which provides that it shall at once become void if the premises shall be vacant. (Reviewing authorities and doubting conclusion of Supreme Court in Insurance Co. v. Kempner, 87 Texas, 236.)

APPEAL from Lee.    Tried below before Hon. H. M. GARWOOD, Special Judge.

This case was previously before the court upon an appeal from a judgment recovered by plaintiff in the lower court.   It was then found as a fact that there was a temporary vacancy of the insured premises, which, however, was held by this court not to avoid the policy.   Insurance Co. v. Kempner, 25 S. W. Rep., 999.   Upon writ of error this ruling was reversed by the Supreme Court.   (87 Texas, 229-238.)   On a second trial, other evidence was introduced, which is here held to sustain a finding that the premises were not, in fact, vacant.   An application for a writ of error upon this judgment was refused.

*Whittaker & Bonner*, for appellant.—1.   If, in the description of the property insured, the recital is that the property insured is only to be used or occupied in a certain way, this is a promissory warranty that the same shall not be changed and must be complied with, and the language of the policy in this case being that the premises were insured "while occupied as a saddlery and printing office," any change in the occupancy without the knowledge or consent of the insurer renders the policy null and void.   The language is as follows: "Two thousand dollars on his two story brick building with metal roof and its additions adjoining and communicating, including foundations, while occupied for the following purposes, saddlery and printing office, etc."   Banking and Ins. Co. v. Stone, 49 Texas, 11;  First National Bank v. Ins. Co., 62 Texas, 464;  Ins. Co. v. Texarkana Foundry & Machine Co., 4 Wilson's Civil Cases, sec. 31;  s. c. 3 Wilson's Civil Cases, sec. 320;  Langworthy v. Ins. Co., 85 N. Y., 632;  1 May on Ins., secs. 219, 248;  1 Wood on Ins., 114 to 116 and 448.

2.   Every part of a contract will be made operative and effective, if possible;  but if it is evident that the written and printed portions of a policy conflict, effect is given to the written portion of it, because, being incorporated into the contract at the time when it was made, it is presumed that it expresses the actual agreement, and that the parties intended thereby to override that portion of the contract expressed in type, which is inconsistent therewith.   1 May on Ins., secs. 177 and 239;  1 Wood on Ins., sec. 58, p. 140.

3. The warranty that the building was to be occupied as a saddlery store and printing office must be construed as expressed .without reference to whether the risk was increased or diminished. Same authorities and Wood v. Ins. Co., 13 Conn., 543.

4. Under a provision of the policy, that the same should become void unless consent in writing was endorsed thereon, if the risk be increased by any change in the occupancy of the building or premises insured, the said policy would be annulled if after the issuance of the policy the building was occupied as a restaurant, wherein a gasoline stove was used, which rendered the risk more hazardous. (The policy contained the following provision: "This policy shall become null and void unless consent in writing is endorsed by the company hereon in each of the following instances, viz., sec. 3. If the risk be increased by any change in the occupation of the building or premises, or by the erection or occupation of adjacent buildings; or by any means whatever within the knowledge of the insured.")

5. Under the provision of a policy against an increase of the risk, if the risk be increased, the policy is avoided, and it is entirely immaterial as to whether the loss was occasioned by the increased risk. 1 May on Insurance, secs. 220, 223 and 227; 1 Wood on Insurance, sec. 252.

6. In this case the description of the property as insured, "while occupied" as a saddlery and printing office, is evidently the basis of the contract, and was furnished to the insurer to enable it to know whether it would agree to take the risk, and is a warranty by the assured, express and unconditional, that the condition of the building as to kind of occupancy shall not vary from the description, so as to increase the risk or liability of the insurer; and that, too, whether the insurer knew of it or not.

The limitation that the increased risk must be within the knowledge of the assured, in order to avoid the policy, applies to a change or alteration in degree, and not in kind of risk. Change of kind is unconditionally prohibited. 1 May on Ins., sec. 248; Stout v. Ins. Co., 12 Iowa, 371.

7. Under the terms and conditions of the policy sued on, if the premises insured became vacant or unoccupied for the purposes indicated therein, without the consent of the company endorsed thereon, the policy at once becomes null and void. (Art. 2, sec. 4, of the policy, reads as follows: "It is a rule of this company not to insure any vacant or unoccupied building, and if any building herein described, be or becomes vacant or unoccupied for the purposes indicated in this contract, without the consent of the company endorsed hereon, this policy shall at once become null and void, and any unearned premium on the same will be refunded to the assured on the surrender of this policy.") See this case, 27 S. W. Rep., 122; 87 Texas, 236; Ins. Co. v. Long, 51 Texas, 91; 1 Wood on Fire Ins. (2d ed.), 91; May on Ins. (3d ed.), secs. 249 to 249 h; Bennett v. Ins. Co., 50 Conn., 420; Franklin Savings Inst. v. Ins.

Co., 119 Mass., 240; Limburg v. Fire Ins. Co., 57 N. W. Rep., 626; Keith v. Ins. Co., 10 Allen, 228; Ins. Co. v. Tucker, 92 Ill., 64; Sleeper v. Ins. Co., 56 N. H., 401; Moore v. Ins. Co., 62 N. H., 240; Halpin v. Ins. Co., 118 N. Y., 165.

8. Where the policy contains a provision making it void if the insured building becomes vacant, such condition of the policy will not be waived, and the company will not be estopped, by the mere silence of the agent. Ins. Co. v. Dunbar, 26 S. W. Rep., 628; 1 May on Ins., sec. 2491; 1 Wood on Ins., sec. 260.

*Rector & Harris* and *Geo. E. Shelley*, for appellee.—1. The facts, as respects the error complained of in appellant's first assignment of error, were the same on this trial as on the former trial of this cause. This court and the Supreme Court having held said assignment not well taken, the error, if any, cannot again be raised by appellant, and the former opinion of this court and of the Supreme Court, even though erroneous, are conclusive of the law of this particular case on that particular point. Burns v. Ledbetter, 56 Texas, 283; Frankland v. Cassaday, 62 Texas, 418; Bomar v. Parker, 68 Texas, 438; Burke v. Matthews, 37 Texas, 74; Roberts v. Cooper, 20 How., 467; 74 Ill., 510; 51 Cal., 699; 53 Ind., 368; Wells' Res. Ad., 613, 614.

2. The court did not err in rendering judgment on the policy, and in construing the clause "while occupied as a saddlery and printing office," to be merely a warranty in presenti that the house was so used at the time of the issuance of the said policy. May on Ins., secs. 247, 248—3d ed., and cases cited; Somerset Fire Ins. v. Usaw, 112 Pa. St., 80; Ins. Co. v. Brockway, 39 Ill. Apps., 43; Martin v. Ins. Co., 84 Iowa, 516; Ins. Co. v. Kimberley, 34 Md., 224; Ins. Co. v. Deckard, 3 Ind. App., 361; Ins. Co. v. Elliott, 85 Va., 962; Billings v. Ins. Co., 20 Conn., 139; Smith v. Ins. Co., 32 N. Y., 399-402; Flanders on Ins., p. 300 et seq.; Idem, p. 512, 513, 524, 268, 284-289; Oneil v. Ins. Co., 3 Comst. (N. Y.), 122; Ins. Co. v. Wetmore, 32 Ill., 243; Joice v. Ins. Co., 45 Me., 168; Ins. Co. v. Langdon, 6 Wend. (N. Y.), 623; Rafferty v. Ins. Co., 3 Harr (N. J.), 480; Blood v. Ins. Co., 12 Cush. (Mass.), 472.

3. The court did not err in rendering judgment on the policy, and in holding that inasmuch as the assured had no knowledge of the increase of risk, such increase of risk would not avoid the policy. May on Insurance, sec. 294f; Ins. Co. v. Clarey, 28 Ill. App., 198; Woggonick v. Ins. Co., 34 Ill. App., 629.

4. The court did not err in holding that at no time did the insured premises became vacant or unoccupied. Ins. Co. v. Race, 150 Ill., 245; Roe v. Ins. Co., 149 Pa. St., 94; Doud v. Ins. Co., 141 Pa. St., 47; O'Neil v. Ins. Co., 3 Comst. (N. Y.), 122; Joice v. Ins. Co., 45 Me., 168; Shackelton v. Ins. Co., 55 Mich., 288; Laselle v. Ins. Co., 43 N. J. L., 468, 469; Cummins v. Ins. Co., 67 N. Y., 260; Ring v. Assr. Co., 145 Mass., 426; Moriarity v. Ins. Co., 53 Minn., 549; Eddy v. Ins. Co., 70 Iowa, 472; Lancy v. Ins. Co., 82 Me., 492; Hotchkiss v. Ins. Co., 76 Wis., 272;

Lockwood v. Ins. Co., 47 Conn., 561; Ins. Co. v. Hannum, 11 Mon-aghan, Pa., 369; Schultz v. Ins. Co., 57 Mo., 337; Snyder v. Ins. Co., 78 Iowa, 146; Dohlantry v. Ins. Co., 83 Wis., 181; England v. Ins. Co., 81 Wis., 583; Bonenfant v. Ins. Co., 76 Mich., 656; Stensgaard v. Ins. Co., 36 Minn., 181.

5.   The court did not err in finding that as to this policy E. A. Burns was still the agent of defendant company; and in concluding, as a matter of law that his knowledge was to be imputed to defendant company, and that appellant was estopped to deny its liability.   Ins. Co. v. Griffin, 59 Texas, 513; Cohen v. Ins. Co., 67 Texas, 328; Morrison v. Ins. Co., 69 Texas, 363.

FISHER, CHIEF JUSTICE.—This suit was originally instituted by H. Kempner to recover on a fire insurance policy issued by the East Texas Fire Insurance Company on a store house in Giddings, Texas, which was destroyed by fire on the 8th of November, 1891.. Pending the suit H. Kempner died, and his surviving wife, Mrs. Eliza Kempner, made herself a party and prosecuted the suit to judgment.

The insurance company interposed the following special defenses:

1.   That the policy was void on account of a change of occupancy of the building insured, without the knowledge or consent of the company.

2.   That the policy was void, because after the issuance thereof there was an increase of the risk by the change in the occupancy of the building.

3.   That the policy was void under the terms and conditions thereof, because the building became vacant and unoccupied for the purposes indicated in the contract of insurance.

A trial was held before the judge without the intervention of a jury. Judgment was rendered for the plaintiff for the full amount of the policy.

We find the following facts:   November 12, 1890, the appellant insurance company issued its policy to H. Kempner, insuring the building described in the policy against loss by fire for two thousand dollars; the policy to expire November 12, 1891.   H. Kempner was the owner of the property at the time it was insured and at the time it was destroyed by fire, which was on the night of November 8, 1891.   After the destruction of the property all notices and proof of loss were given to appellant as the policy required, and the property so destroyed was of value sufficient to cover the amount of insurance.

On a slip partly printed and partly in writing attached to the policy—but what part is in writing and what part is printed is not shown—it is stated that the property insured is a "two story brick building with metal roof, and its additions, adjoining and communicating, including foundation, while occupied for the following purposes: saddlery and printing office, situated on lots 1 and 2, block No. 12, Giddings, Texas."

The policy contains printed conditions as follows:   "Article 2.   This policy shall become void unless consent in writing is endorsed by the

company hereon in each of the following instances, viz.: Section 3. If the risk be increased by any change in the occupation of the building or premises herein described or by the erection or occupation of adjacent buildings, or by any means whatever within the knowledge of the assured. Section 4. It is a rule of this company not to insure any vacant or unoccupied building, and if any building herein described be or become vacant or unoccupied for the purposes indicated in this contract, without the consent of the company endorsed thereon, this policy shall at once become null and void, and any unearned premium on the same will be refunded to the assured on surrender of this policy."

No consent as above required was given by appellant. The policy also stipulated that it was understood and agreed by and between the company and the assured that the policy was issued and accepted upon the terms and conditions therein stated, together with such clause and conditions, whether written or printed, as shall be attached to or contained in this policy, all of which are declared to be parts of the contract of insurance, and that said clause, terms and conditions cannot be waived or altered by any agent of the company.

H. Kempner died while this suit was pending and his wife, the plaintiff herein, first having qualified as administratrix of the community estate, prosecutes this suit.

The building in question at the time of the policy was issued, Nov. 12, 1890, was occupied by J. D. Northrup, the lower floor as a saddlery and hardware store and the upper floor as a printing office. It continued to be so occupied until February, 1891, when J. D. Northrup sold out the saddlery stock and a part of the hardware stock to E. Saetler. A part of the hardware was not sold, and it remained in the store with Saetler's consent as the property of J. D. Northrup. Saetler continued the same business for a short time and made an assignment of the saddlery stock to one Geo. Seay, who, as assignee, sold the stock out, he at the time occupying the store room as his office, he being a justice of the peace. The assignee sold the last of the saddlery stock a few days before Kirschner moved into the store, but he continued to occupy the lower floor as his justice of the peace office until after Kirschner moved in and after the printing office was moved out. When Saetler failed he assigned his hardware stock to one R. H. Northrup, who kept said stock in the insured building and sold it as he could, at the same time he had in his control in the building the hardware stock remaining unsold that belonged to J. D. Northrup.

J. W. Northrup occupied the upper story as a printing office until about the middle of August, 1891, when he moved out, so that Paul Kirschner could move into the building, which had previously been rented to him by J. D. Northrup. J. W. Northrup moved out the printing establishment of J. D. Northrup on Saturday, and on the following Monday Kirschner took possession of the building, cleaned it up, and on the following Tuesday moved in a stock of furniture, and it was so occupied up to the fire that destroyed the building, with the

addition that in October, 1891, a portion of the store room was used by one Jones as a restaurant and using therein a gasoline stove for cooking.

A part of the hardware that belonged to J. D. Northrup, which was in the store when he sold to Saetler, was permitted by the consent of Kirschner to remain in the building, and was, by J. D. Northrup, put in charge of his father, who sold said hardware as opportunity offered. Northrup when he sold out to Saetler moved to Houston, Texas.

That after Geo. Seay, the assignee of the saddlery stock of Saetler, sold it out, R. H. Northrup, as assignee of the Saetler hardware stock, still occupied the building and kept therein the unsold stock, and also kept therein the goods belonging to J. D. Northrup remaining unsold; that while he did not in person remain all day long in the store every day he was there every day, selling and trying to sell the goods, and while not there, J. W. Northrup, in charge of the printing office upstairs, was duly authorized to price and sell the goods to customers. That during business hours one of the doors to store room below in front stood habitually open, and frequently more than one of the doors were open. That in this way said R. H. Northrup occupied the building until after Kirschner had moved in and had moved his stock in, and that he moved out the Saetler hardware stock unsold after Kirschner had moved in, at Kirschner's request. The unsold hardware stock belonging to J. D. Northrup, with the consent of Kirschner, he still kept in the building, and a lot of the same, consisting of several cane mills, a number of cultivators, a lot of belting and shelf goods, remained there until the fire and were burned up, when the building was burned. It was shown that the building had been rented to Kirschner by J. D. Northrup before either the printing establishment or the hardware and saddlery business had moved out, and that the removal of the printing business was hurried up at the instance of Kirschner. It was shown that Paul Kirschner paid J. D. Northrup rent from the time the printing office moved out. It was shown that J. D. Northrup had rented the building for two years from H. Kempner, beginning February 1, 1890, and that the rent was paid by the said J. D. Northrup to said Kempner. That Kirschner was a tenant under Northrup.

In view of these facts, we find that the building insured was neither vacant or unoccupied within the meaning of the policy, and that it was within the meaning of the policy in continuous use.

We also find that by reason of the use of the gasoline stove the risk was increased, but we do not find that the risk was increased by reason of the change in the character of use and occupancy of the building, except as above stated. We also find that during the life of the policy, J. D. Northrup leased the building from H. Kempner for two years, and by his lease it was agreed that Northrup should observe the rules of the insurance companies, and that he should not sublet the building except by Kempner's consent. We also find that during that time and up to the destruction of the building by fire, Kempner resided in Galveston,

Texas, and that he had no notice or knowledge that the building was occupied and used as a furniture store and restaurant and that a gasoline stove was used in it.

The evidence shows that one Burns was the agent of appellant, when the policy of insurance was issued, stationed at Giddings, and it appears that he knew of the change in the use of the building, and that it was being used as a restaurant and furniture store, but the evidence shows that before such change in the occupancy and use, his authority as appellant's agent was revoked; therefore, we find that at the time Burns ascertained the change in the use and occupancy of the building he was not appellant's agent. It is shown that appellant did not know of such change in the occupancy or of the increased risk by reason of the use of the gasoline stove.

*Opinion.*—The appellant contends that the expression in the policy "while occupied for the following purposes, saddlery and printing office," is a continuing warranty that the building will be so occupied, and that a use or occupancy for other and different purposes than those stated will defeat the policy.

This identical question was raised in the former appeal of this case, and was by this court decided adversely to appellant, which ruling was approved by the Supreme Court. Insurance Co. v. Kempner, 25 S. W. Rep., 999; same case, 87 Texas, 236.

We see no reason to change our former ruling upon this question. In the first case cited, the reasons for the ruling are given. In addition we may say that if this stipulation is entitled to be construed as a warranty and not a representation, it should only be considered as warranting the then present condition of the property, and not as a promissory warranty that it will be continued to be devoted to the same use. 1 May on Insurance (3d ed.), sec. 247; Insurance Co. v. Kiernan, 83 Ky., 468; Evans v. Insurance Co., 31 N. E. Rep., 843; Insurance Co. v. Brockway, 28 N. E. Rep., 799.

The policy before the court in the last case cited, in describing the property insured and the uses to which it is put, uses the expression, "while occupied." It is there held that if the company desired to make its liability contingent upon the continued occupancy of the building as a dwelling, it could have expressly stated that fact, and that in the absence of such an express agreement, a statement in the policy that a building is so occupied is not a warranty that the same character of occupancy will continue. We can not say from the facts that the words "while occupied" were written. They may have been printed. Therefore the rule stated in the second proposition under the first assignment of error cannot be applied. We cannot presume in the absence of proof that these words were written and and not printed. In fact, we can indulge in no presumption about the matter. If the appellant desired to place itself in the position to insist upon the rule of law that in a conflict or inconsistency between words that are printed and those that are

written into a policy, the former must yield to the latter, it should have offered evidence showing what words were in writing and those that were printed. There is no evidence to this effect in the record.

It is insisted that the policy is void because the risk was increased. The policy provides that if the risk be increased by any change in the occupation of the building or premises, or by the erection or occupation of adjacent buildings, or by any means whatever within the knowledge of the assured.

The evidence shows that Kempner, the assured, did not have any knowledge of the change in occupancy, or of any use or act that would increase the risk. His want of knowledge of the use of the gasoline stove, in our opinion, by the terms of the policy settles this question against the appellant.

It is next contended that the policy is void because the premises insured became vacant or unoccupied for the purposes indicated in the policy without the consent of the company endorsed thereon.

The expresion "for the purposes indicated" cannot be given the meaning urged by appellant. Section three of the policy, in effect, authorizes a change in the occupancy of the building without any restriction as to the character of use of occupancy, except in a case where the risk may be increased. If the words "for the purposes indicated" are subject to the meaning that the premises shall only be occupied and used for a saddlery and printing office or a business of a similar nature, then it conflicts with section three that permits a use without any restriction, except that the risk be not increased.

When the provisions of a policy are inconsistent or conflict with one another, or when the meaning is uncertain or doubtful of ascertainment, it should be construed so as to save the policy and prevent a forfeiture. 1 May, Insurance, secs. 174-177; 11 Am. & Eng. Encycl. Law, 286; Insurance Co. v. Storig, 24 N. E. Rep., 675.

The important question presented under this assignment is,—was the property at any time vacant or unoccupied within the meaning of the terms of the policy? The Supreme Court, in the first appeal of this case, decided that a temporary vacancy defeated the policy, and upon this question differed with this court and the trial court, and reversed our judgment wherein we affirmed the judgment of the trial court. To meet this ruling, the appellee introduced the evidence set out in our findings of facts showing an occupancy of the premises. These facts were not before the court in the former disposition of the case. The policy by its terms, in effect, contemplated that there could be a change in the possession of the property; and a use of the property in the manner existing at the time the policy was issued was not required, as the policy, in effect, as we have construed it, allows of a use for other business so that the risk is not increased within the knowledge of the assured. With this construction of the policy, we think the facts show that the property was not unoccupied or vacant, and that the use made of it was consistent with the terms of the policy. Our views upon this

question are supported by the cases that will be noticed in discussing the following question.

The Supreme Court, on the first appeal of this case, held that a temporary vacancy of the premises existing from Saturday to the following Tuesday avoided the policy. This question may not arise in this present appeal, as the evidence, as we construe it, does not show such a vacancy as was shown to exist when the case was first here, but there are some slight facts from which it may be inferred that there was not a continuous use in the nature of a personal occupancy by the tenant for every day in which the premises were rented. For instance, it may be inferred from the evidence that Kirschner was not in personal possession of the building on Sunday, the day after the printing office was moved out, although it does appear that a part of the hardware belonging to Northrup was in the building at that time, and that it was occupied by Seay as his justice office. It appears that before any vacancy existed, if it can be claimed that there was a vacancy, Kirschner was engaged as a tenant to take possession, and the contract for that purpose had been entered into between him and Northrup.

In view of the ruling that was formerly made by the Supreme Court, Insurance Co. v. Kempner, 87 Texas, 237, and in view of a like possible ruling that may be made by that court under the facts as stated, that a temporary vacancy was shown and therefore the policy is avoided, we desire, in all deference and respect for the learning of that court, to express our views in opposition to its ruling. The Supreme Court, in its opinion in construing that clause of the policy that provides that it shall become void if the building becomes vacant or unoccupied, says: "In Ridge v. Insurance Company, 9 Lea (Tenn.), 507, the policy provided that in case the house should become vacant the policy would be void. The tenant moved out, and in a few days the house burned. It was held that the company was not liable. In that case, however, the court said that if the house had been reoccupied before the fire, it would have held that the language meant that the policy was to be void only during the vacancy.

"In the case before the court the policy is exceptionally explicit and apt in the statement of the terms of liability. It is first stated, that the company will not insure vacant houses; and to enforce the rule with certainty, it is provided that if the house should become vacant or unoccupied without the consent of the company, the policy shall at once become null and void. The words "at once" clearly and unmistakably express the intention that the fact of becoming vacant annulled the policy. It was not to be void for an indefinite time, nor to become void in the future, but now and forever. This intention is rendered still more certain by the further provision that the unearned premium should, upon the surrender of the policy, be returned to the assured. The relation of assured and assurer was then and there to terminate; the business was to be closed up at once.

"All business houses when vacant are so temporarily in the con-

templation of the owner, who either intends to occupy himself or to rent to some other person as soon as he can do so. If a court can say that a condition like that contained in this policy does not include temporary vacancies, then what period will be inserted into each contract, by construction, during which the policy shall remain in force? If we can say three days, why not a month, three months, or even six months, according to the opinion of the court? Plaintiff was required to know the terms of his policy, the contract that he made, and to know the condition of his property and to provide for its protection. This was not a duty of the insurance company.

"It was lawful for the parties to make a contract embraced in this policy, and it was not unreasonable on the part of the insurance company to stipulate for exemption from liability in case of the vacancy of the building. The language used was not calculated to mislead the plaintiff; by proper attention to his affairs he would know what security the policy afforded him. The language indicates that the intention was to exclude judicial construction by making the terms unambiguous, and the court must enforce the contract as made."

The words "at once" upon which the court seems to lay stress are not important to be considered in determining when a vacancy occurred, and cannot logically be considered for that purpose, but their meaning and application becomes important only in determining what effect shall result when a vacancy is shown. These words do not even remotely indicate that a temporary vacancy or want of occupancy will avoid the policy; they simply declare that when a vacancy exists, then the policy shall be void. They do not qualify the general rule that exists in this case and others of this character—and which it seems was not considered or given application by the Supreme Court—to the effect that the vacancy clause in the policy of insurance will be construed with reference to the uses and purposes for which the building is used and adapted, and will be given effect as contemplated by the parties at the time the contract of insurance was entered into.

The contract before us did not in terms give to a temporary vacancy or unoccupancy the effect of avoiding the policy; but it only in general terms stated, that if the building should become vacant or unoccupied the policy should become void. It appears upon the face of the policy that a change of occupants was permissible, and that the building was of a character that may be used and occupied by tenants at different times. In reason and in the nature of things, the assumption under this state of facts necessarily arises, that the parties to the contract contemplated that one tenant may move out and another move into the building; and to accomplish this purpose it was not essential, in order to preserve the life of the policy, that the incoming tenant should be required to do the unusual and unheard of thing of taking actual possession and moving into the building before the outgoing tenant had moved out and vacated it; but upon the contrary, it is fair to assume, from the nature of the contract, that a reasonable time may be allowed

the incoming tenant in which to take possession. This construction naturally arises from the terms of the policy when considered with the character of property insured. To so hold that the contract in this case requires a forfeiture to be declared upon a vacancy so arising, would be to place upon the policy an unreasonable and strained construction, and would give to the language used a technical effect and application that would, in our opinion, defeat the meaning and intent of parties that may be gathered from a reasonable construction of the terms of the contract. But this, in our opinion, is the effect of the. decision of the Supreme Court. The reasoning in that case, by an inverse process, would logically lead to the holding that a vacancy or unoc-cupancy for the fraction of an hour or an hour's time would avoid the policy; or, in other words, that one who insures his property under a stipulation of this character must become a prisoner confined to his premises, otherwise a temporary absence such as a closing up and ab-senting himself from his place of business on the Lord's day, or a visit to his neighbors, or a removal for a time however slight of his furni-ture and goods out of the building for the purpose of repairing it and cleaning it, would be at the peril of a forfeiture of his policy. Such a result, we think, was never contemplated by the parties to this con-tract. But, upon the contrary, knowing that the policy authorized a change of tenants, and that in the nature of things a change might occur, it would be unreasonable to construe the contract in a way that would practically cut off this right, and to arbitrarily declare that this purpose as contemplated should not be given effect.

As authority for the views expressed and upon the point that the facts show a use and occupancy of the building the following cases may be read:

In Insurance Co. v. Davis, 59 N. W. Rep., 700, the building insured was occupied by tenants and used by them as a billiard hall and saloon. They moved out of the building about six o'clock in the evening; and some time during the night after the removal, the fire occurred that de-stroyed the property. The policy provided "that this policy shall not cover unoccupied buildings; and if the premises shall be vacated without the consent of the company the policy shall cease and terminate." The assured lived at another place, and had no notice that the tenants in-tended to vacate the premises. It is held that the words "vacate" and "unoccupied," when used in a policy, must be construed in view of the uses and purposes for which the building is used and adapted, which must have been within the contemplation of the parties when the con-tract was entered into.

The use to which the building is adapted and devoted has much to do in determining whether it is vacant and unoccupied. Each case must be determined upon its own peculiar facts. And when in the character of occupancy it appears that a change of tenants may occur, it is reason-able to suppose that the parties did not intend that such a temporary sus-pension of actual occupancy, in order to accomplish a change, would be

fatal. To the same effect is the ruling in the case of Insurance Co. v. Buckstaff, 38 Neb., 146 (56 N. W. Rep., 695).

In Hotchkiss v. Insurance Co., 76 Wis., 269, 44 N. W. Rep., 1106, construing the term "vacant" or unoccupied in a policy, the court says: "Under certain circumstances premises may be vacant or unoccupied, when under other circumstances premises in like situation may not be so within the meaning of that term in insurance policies. Thus, if one insures his dwelling house as occupied as his residence, and moves out of it, leaving no person in occupation thereof, it thereby becomes vacant and unoccupied; but if he insures a tenement house, or one occupied by a tenant, it may fairly be presumed, nothing appearing to the contrary, that the parties to the contract contemplated that the tenant was liable to leave, and that more or less time might elapse before the owner could procure another tenant, and hence that the parties did not understand that the house should be considered vacant and the policy forfeited immediately upon the tenant leaving it. This distinction is made also in Locke v. American Co., 47 Conn., 561; Whitney v. Insurance Co., 9 Hun., 39; 1 Woods on Ins., pp. 208-210; Insurance Co. v. Race, 29 N. E. Rep., 846; Insurance Co. v. Wood, 47 Kan., 521; Roe v. Insurance Co., 23 Atl. Rep., 718; City Planing Co. v. Insurance Co., 40 N. W. Rep., 777.

In Hill v. Insurance Co., 58 N. W. Rep., 359, the policy provided that the building, which was a residence, would be void if it be or become vacant or unoccupied and so remain for ten days. The plaintiff went on a visit and remained away for more than ten days, leaving in the house her household goods and possessions, with the intention of soon returning, and left in her stable a horse. She engaged a neighbor and his wife to visit the house daily, look after the things in the house and attend to the horse, and left the keys with the neighbor. During her absence the neighbor visited the house daily and looked after things in her absence. It was held, under the authority of Stupetski v. Insurance Co., 43 Mich., 373, and 67 N. Y., 260, that the policy was not forfeited.

In Strunk v. Farmers' Insurance Co., 28 Atl. Rep., 779, the policy on a building occupied by a tenant declared that it would be void if the premises became vacant "without immediate notice to the company and consent thereon endorsed." It was held that the term "immediate notice" meant a reasonable time, and that it did not imply that the policy should be void immediately upon the house becoming vacant.

In Laselle v. Insurance Co., 43 N. J. L., 469, the policy provided that if the dwelling house shall become vacant or unoccupied, it should become void. The owner went away for the night of the fire. It was insisted that this was a vacancy or want of occupancy. The court says: "If this be so, then the party insured, if the only occupant of the premises, could not put his foot off the premises without leaving his buildings in an uninsured condition. Such an interpretation of the clause is quite unreasonable. A dwelling house does not become vacant or un-

occupied, in the usual acceptation of such terms, when the tenant leaves it in the ordinary course of things for a few hours. A furnished abode would not, according to usage, be called a vacant or unoccupied house on account of the temporary absence of the tenant. It is in the utmost degree improbable that it was the understanding of these contracting parties that this property was to lose its insurance the moment and so often as the occupant left it to visit a neighbor or attend to business."

In Shackelton v. Insurance Co., 55 Mich., 288, a dwelling house occupied by a tenant was insured. The tenant moved out and the owner moved her own things in and began to clean up, preparatory to living there herself. The next day she went away for a three days' absence. While cleaning the house she did not eat or sleep there, and after a few days she went off again on a business trip, and while gone the house was burned. The policy provided that it shall become "void if the building insured be or become vacant or unoccupied for the purposes indicated in this contract." In an opinion by Judge Cooley it was held that the temporary absence did not vacate the policy, and that in contemplation of law her use was continuous, and the court says that "the presence of the occupant of the building need not be continuous or uninterrupted, and that the necessity for temporary absence on business or for family convenience or pleasure is recognized, and the insurer is understood to contemplate and assent to them."

In Eddy v. Insurance Co., 70 Iowa, 477 (59 Am. Rep., 444) the policy provided that the company should not be liable for any loss or damage while the insured house was vacant or unoccupied. The dwelling was insured while occupied by a tenant who moved out on Tuesday. The fire occurred on the following Friday. On the day after the tenant moved out, the owner and his servant cleaned the house and prepared to move in. They were engaged every day in cleaning the house and moving in the household goods, until Friday. The owner's family expected to move in on Saturday and occupy the house. The court says, that a house is not vacant or unoccupied by the mere physical absence of the occupant for a day or night, and that the contract must receive a reasonable construction; and quoting from Dennison v. Insurance Co., 52 Iowa, 457, says the parties did not intend that one tenant should not move out and another move in, nor did they intend that the house should be vacant if the occupant should clean it and go off on a visit and not occupy it for a reasonable time. The court in this case held that there was no vacancy shown. In Williams v. Insurance Co., 34 Fed. Rep., 625, the policy provided that it should be void if the property ceased to be occupied. It is held that when the property insured was an elevator, and it appears that a part of the time it was not actually used, and there was no steam up or men working there, but men were around the place all the time, and the insured kept his papers there, it was held that the elevator was not vacant in the sense that would avoid the policy.

In McMurray v. Insurance Co., 54 N. W. Rep., 355, the house insured

was the place of residence of the plaintiff and his family. The policy provided that if the premises shall become vacant or unoccupied for more than five consecutive days, it should be void. The owner had been away for several months, and the family were absent for eight days on a visit. When the wife went on the visit, she left the keys with her sister, and requested her to look after the place, and that her sister's son fed and attended to a cow left on the place. During her absence the nephew daily visited the place to milk the cow and work in the garden and was in the house each day. There was no intent to abandon the house. It was held that the house was neither vacant nor unoccupied.

In Insurance Co. v. Race, 29 N. E. Rep., 847, the policy provided that if the premises should become vacant or unoccupied without consent of the company, the policy should become void. The building insured was a dwelling house, and was occupied by a tenant. The house was rented by the tenant for term to expire May 1, 1885. March 15, 1885, the tenant notified the owner that he would surrender the house, and left the premises, and left in it a part of his furniture. Upon being notified, the owner hired a man to take care of the house and to sleep in it. He also had some of his furniture in the house, and some members of the family were there every day. On Friday, May 1, another tenant leased the premises and agreed to move into the house on the following Monday; but he did not move in on Monday, but decided to move in on the fifth of May. Fires were built in the house a day preparatory to his occupancy, but on that day it was destroyed by fire. It was held that these facts showed an occupancy. It is held that conditions of forfeiture are inserted for the benefit of the company and that they will be strictly construed; and whether the condition has been broken is a question of fact, to be determined from a consideration of the facts and circumstances proved; and that such conditions as to vacancy and occupancy are to be considered with reference to the species of property insured and the uses to which it is or may be devoted under the contract; citing Bennett v. Insurance Co., 51 Conn., 504, and holds that a temporary absence or vacancy will not forfeit the policy.

In Insurance Co. v. Brockway, 28 N. E. Rep., 799, the policy ran for one year, and described the property as a "two story shingle roof building, while occupied by assured as a store and dwelling house, and provided that the policy shall become void if the property should become vacant or unoccupied. When the policy was written, the assured occupied the building partly as a store and partly as a dwelling. He ceased to occupy it as a dwelling, but continued to occupy it as a store. It was held that if the company desired to make its liability contingent upon the continued occupancy of the building as a dwelling, it could have very well and easily stated that fact, and that in the absence of such an express agreement, a statement in a policy that a building is so occupied is not a warranty that it will be continued to be so occupied; citing 7 Am. & Eng. Encycl. Law, 1036. The court also held that there was no

vacancy, and that the building was occupied in the meaning of the policy.

In Roe v. Insurance Co., 23 Atl. Rep., 718, the property insured was a dwelling house. The building was insured when occupied by a tenant, and before his term expired, the landlord had provided for occupancy by another tenant; a term of four days elapsed in which the building was unoccupied by the out-going or in-coming tenants. It was held that there was not an absolute abandonment, but a temporary vacancy in occupancy that was contemplated by the parties. To the same effect is Insurance Co. v. Kepler, 95 Pa. St., 492, and Doud v. Insurance Co., 21 Atl. Rep., 505. This case, as well as the one cited in 21 Atl. Rep., 505, explains and distinguishes the case cited by the Tennessee court as authority, which in turn is cited by the Supreme Court as authority in Insurance Co. v. Kempner.

In Insurance Co. v. McLimans, 45 N. W. Rep., 172, the building insured was in part occupied as a billiard hall, and the upper story as a dwelling. The policy provided that it would become void if the premises should become vacant or unoccupied. It is held that a temporary unoccupancy or vacancy will not forfeit the policy. The assured is not to become a prisoner at his residence, nor to be charged with laches if in the pursuit of his business or pleasure he temporarily leaves the property which still remains his home, and that such privileges are supposed to be in the contemplation of the parties when the contract was made; a policy of insurance is to be construed, if possible, so as to carry into effect the purpose for which the insurance is made; and finally holds that a mere temporary absence was not fatal to the policy. In Fritz v. Insurance Co., 44 N. W. Rep., 140, 141, it is held that the intent of the parties in respect to occupancy is to be gathered from the usual and ordinary use of the premises for the purposes to which they are devoted. In this case a barn was insured; there was a use of the property by putting produce in it, and occasionally put farming tools in it; the policy provided that the premises must not become vacant or unoccupied. It was held that the policy could be enforced.

In Poss v. Insurance Co., 40 Am. Rep., 70, a policy upon a manufacturing establishment provided that it shall be void if the property shall cease to be operated. It is held that forfeitures are not favored, and that the letter of the contract will not be looked to, for, if so, a failure to operate upon Sunday or a temporary suspension for the purpose of cleaning out the boilers, etc., would avoid it; and that such a result was clearly not contemplated by the parties; and, in conclusion, that a temporary cessation from operation would not forfeit the policy.

In Wait v. Insurance Co., 13 Hun., 373, a dwelling house was insured when occupied by a tenant. He moved his family out, and a part of his furniture, and the next day the property was destroyed. It was held that it was not such a vacancy or unoccupancy as could be said to be contemplated by the contract, and the question was one for the jury to

determine, if the facts showed such unoccupancy or vacancy as was meant by the contract.

In Insurance Co. v. Kepler, 95 Pa. St., 492, the policy provided that it would not cover unoccupied buildings, and if the premises should be vacated the policy should cease and terminate. The assured was absent from his dwelling from Wednesday until Monday to attend a funeral, and left during that time no occupant in the house. Held, that such a temporary absence was not a breach of the policy.

In Worley v. Insurance Co., 59 N. W. Rep., 17, the policy provided that if there is "any change in the occupant or occupancy of the premises insured, or if they become vacant, this policy shall become void." The house was occupied by a tenant who moved out on Wednesday; the fire occurred on the following Saturday. Before the tenant moved out, the owner had rented it to another party, who was to move in on the following Monday. The policy provided that the house was to be occupied by a tenant as a family residence. The court says, that it must surely have been contemplated by the parties that there would be changes of tenants during the life of the policy, and that some time would intervene between the going out of one and the coming in of another. The condition against the premises becoming vacant must have been made in view of this probability, and it was not intended that the lapse of a reasonable time in changing tenants should render the policy void. The court held that the house was not vacant within the meaning of the policy.

In Insurance Co. v. Leathers, 8 Atl. Rep., 424, it is held that a clause in a policy providing that the policy shall be void if the property ceased to be operated was not violated, when there was simply a temporary cessation of operation, in order to repair and for the want of supplies.

In Whitney v. Insurance Co., 28 Am. Rep., 116 (72 N. Y., 117), the insurance was upon a saw mill run by water power, and the policy provided that if the premises became vacant or unoccupied the policy shall be void. Held, that a provision in a policy concerning occupancy or vacancy is to be construed in view of the relation and character of the property insured and the contingencies affecting its use. The description in the policy shows that the defendant knew that the mill was operated by water power, and, as machinery was used in its operation, the fact that it may break down and that it should be repaired was evidently in contemplation of the contract; and that such interruptions of a temporary character did not violate the terms of the policy. And the court say, by way of illustration, "Take the case of the insurance of a church building, school house or cider mill, would the fact that the church was closed for six days in the week be a violation of the condition in question, or would a school house in vacation time, or the cider mill when no apples were to be had, be without the protection of the policy? These illustrations seem to show that the condition against vacancy and non-occupation is to be construed and applied in view of

the subject matter of the contract and of the ordinary incidents attending the use of the insured property."

In Herman v. Insurance Co., 81 N. Y., 184 (37 Am. Rep., 489), plaintiff procured an insurance on a summer dwelling. He removed from it in November, leaving the furniture in it and leaving it in care of a person residing near it, intending to occupy it the next spring. It was held that the dwelling was not "vacant and unoccupied," and that the policy was not avoided. The court says that in ascertaining the meaning of the words "vacant and unoccupied," they should not be taken in a technical and narrow sense, but should be taken in their ordinary sense, as commonly used and understood; and, if the sense in which they are used is uncertain, they should be construed more favorably to the insured.

In Planing Mill v. Insurance Co., 72 Mich., 657, the insurance was upon a planing mill; the policy provided that it should become void if the property became vacant or unoccupied, or ceased to be operated. The mill temporarily stopped on account of the want of logs, but they were expected every day. The court says: "Something more was meant than a temporary suspension; and the provision relating to occupancy and operation did not simply mean a shutting down of business for a few days, because of the happening of some incident to the business of conducting a mill, which might be reasonably expected by the parties when the contract of insurance was made."

In Caraher v. Insurance Co., 63 Hun., 93, in construing whether a church building which was the subject of insurance was vacant or unoccupied, the court says: "A condition of this kind is to be construed in view of the intention and character of the property insured, and in view of contingencies as to its use within the reasonable contemplation of the parties; and holds that, as services in the church were suspended only on account of the sickness of the minister, there was no breach of the condition; and that whether the property became vacant or not was a question of fact."

In our opinion the character of the property insured, the purposes for which it was adapted and used, and the terms of the contract of insurance, indicate that the parties contemplated that a temporary vacancy, reasonable in time, so as to permit the incoming tenant to take possession, would not be fatal to the policy; and that this is apparent when that provision of the contract that provides for forfeiture in the case of vacancy or want of occupancy is construed with that clause of the policy that virtually provides for a change of possession.

In our opinion the judgment below should be affirmed, and it is so ordered.

*Affirmed.*

Delivered February 28, 1896.

Writ of error refused.