United States Court of Appeals,

Fifth Circuit.

No. 96-20407.

HANSON PRODUCTION COMPANY, Neil E. Hanson, Chris W. Douglas, Steven M. Morris, Erik G. Hanson, Monico Properties, Inc., Chris N. Hanson, Michael E. Hanson, Ben A. McCarthy, Glen E. Vague, John J. Surko, T & M Petroleum, Inc., T.D. Gholson, Patricia Dean Boswell, Hamill Energy Company, Pvt 85 Ltd., Thru Line, Inc., Keystone, Inc., Sid R. Bass, Inc., Lee M. Bass, Inc., Perry R. Bass, Inc., Perry R. Bass, Trustee, and Vivian L. Smith, Estate, Plaintiffs-Appellants,

v.

AMERICAS INSURANCE COMPANY and Southern Marine & Aviation Underwriters, Inc., Defendants-Appellees.

April 1, 1997.

Appeal from the United States District Court for the Southern District of Texas.

Before POLITZ, Chief Judge, and REAVLEY and DENNIS, Circuit Judges.

REAVLEY, Circuit Judge:

The issue in this diversity case under Texas law is whether a surplus lines insurer, in order to avoid its coverage obligations, must show prejudice where the insured has failed to provide prompt notice of a claim. Because we conclude that the Supreme Court of Texas would require proof of prejudice, we reverse.

BACKGROUND

In 1985 appellant Hanson Minerals Company, a Texas corporation, entered into operating agreements pertaining to a Texas oil and gas prospect. In 1989 and 1990, per its agreement with the non-operators, Hanson procured two comprehensive general liability (CGL) and three excess liability policies from appellees Americas Insurance Company and Southern Marine Aviation

Underwriters, Inc. (the insurers). The insurers are surplus lines insurers under Texas law, as discussed below.

In October 1991 other parties to the lease sued Hanson in state court. These plaintiffs alleged that Hanson had breached its contractual obligations and negligently operated the leased property. In an amended petition filed in August of 1993, the plaintiffs claimed that Hanson, through its over-production of oil and gas, had damaged the reservoir. Hanson argues that a claim asserting an occurrence under the policies was not made in the underlying suit until the amended petition was filed, since the original petition did not allege bodily injury or property damage covered by the policies.

On January 25, 1994, Hanson first notified the insurers of the underlying suit and demanded a defense. The notice was sent twenty-seven months after service of the original petition in the underlying suit, and five months after service of the amended petition. The underlying suit went to trial in August of 1994, and Hanson settled the suit for $795,000 in November of 1994. The insurers refused to fund the settlement.

The Southern Marine primary policy requires the insured to notify the insurer "immediately" of any occurrence under the policy likely to result in a claim. The Americas primary policy requires that the insured notify the insurer of an occurrence under the policy "as soon as practicable," and that the insured "immediately" notify the insurer of a claim or suit against the insured. The excess policies also have notice requirements. Both primary

2

policies provide that "[n]o action shall lie against the [insurer] unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this policy."

Shortly after the settlement of the underlying suit, Hanson sued the insurers, asserting breach of contract and other claims. The district court granted summary judgment in favor of the insurers, agreeing with them that under Texas law the notice required in the primary policies was a condition precedent to the insurers' coverage obligations, and that a policy condition requiring notice "immediately" or "as soon as practicable" is construed to mean within a reasonable time in light of the circumstances.[1] The court concluded that the notice Hanson provided was untimely as a matter of law, and therefore Hanson was barred from recovery under the primary policies, regardless of whether the insurers had been prejudiced by the late notice.

The district court also ruled that the insurers were not liable under the excess policies because (1) Hanson failed to offer summary judgment evidence that the primary layer of coverage had been exhausted, and (2) the excess policies exclude coverage for liabilities not covered by the primary policies, and Hanson's claim under the primary policies were not covered due to the late notice.

### DISCUSSION

We agree with the parties that Texas law governs this diversity suit, since by statute Texas law governs any insurance

_____

[1]*See McPherson v. St. Paul Fire & Marine Ins. Co.,* 350 F.2d 563, 566 (5th Cir.1965) (interpreting Texas law).

policy "payable to any citizen or inhabitant of this State."[2]  Our goal, sitting as an *Erie* court, is to rule the way the Texas Supreme Court would rule on the issue presented.[3]  We are persuaded that the Texas court would rule that the insurers cannot prevail on their late notice defense unless they were prejudiced.

This issue was raised in *Members Mut. Ins. Co. v. Cutaia,* 476 S.W.2d 278 (Tex.1972).  The plaintiff Cutaia had an automobile insurance policy with defendant Members Mutual.  Cutaia had an accident with Smith, also insured by Members Mutual.  Smith did not notify Members Mutual of the accident until five months after it occurred.  The policy, like the CGL policies in our case, provided that "no action shall lie against the [insurer] unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this policy."[4]  The insurer refused to pay Cutaia after he won a judgment against Smith, because Smith failed to comply with the notice requirement.  The court held that this policy provision was a condition precedent to liability regardless of whether the insurer was harmed or prejudiced by the late notice, and rendered judgment in favor of the insurer.

In *Cutaia* the court recognized "the apparent injustice which results in this particular case,"[5] but concluded that "the matter

---

[2]TEX. INS.CODE ANN. art. 21.42 (West 1981).

[3]*Browning Seed, Inc. v. Bayles,* 812 F.2d 999, 1002 (5th Cir.1987).

[4]*Id.* at 278.

[5]*Id.* at 281.

4

of rewriting the insurance provisions in question is properly within the prerogative of the State Board of Insurance or the Legislature."[6]

Probably in response to *Cutaia*, in 1973 the State Board of Insurance issued orders requiring a mandatory endorsement in Texas general liability and general automobile policies stating that a failure to give notice under the policy does not bar coverage unless the insurer has been prejudiced.[7] Board Order No. 23080, covering general liability policies, requires an endorsement stating that "unless the company is prejudiced by the insured's failure to comply with the requirement, any provision of this policy requiring the insured to give notice of action, occurrence or loss, or requiring the insured to forward demands, notices, summons or other legal process, shall not bar liability under this policy."[8] The order also provides that this endorsement "must be attached to all General Liability policies issued or delivered in Texas." In 1987 Board Order 23080 was superseded by Board Order No. 50602, which maintains the same prejudice requirement.

The Board's authority to require this endorsement in general liability policies appears to derive from its authority to promulgate standard forms, which may be used by the insurer in lieu of its own form, and the statutory requirement that general

---

[6]*Id.* at 278.

[7]*See American States Ins. Co. v. Hanson Indus.,* 873 F.Supp. 17, 27 (S.D.Tex.1995); *Chiles v. Chubb Lloyds Ins. Co.,* 858 S.W.2d 633, 635 (Tex.App.—Houston [1st Dist.] 1993, writ denied).

[8]*See Chiles,* 858 S.W.2d at 635.

liability policies must be approved by the Board.[9] This statutory authority, however, only extends to policies issued by a licensed insurer.[10] The policies in our case are surplus lines insurers. A surplus lines insurer is an unlicensed insurer.[11] By statute Texas allows unlicensed insurers to sell policies in the state if, among other requirements, the insurance is placed through a licensed surplus lines agent, and insurance "cannot be procured from licensed insurers after diligent effort."[12] The statute recognizes that the placing of such policies is "a matter of public interest," and is allowed in limited circumstances "as a result of difficulty in obtaining coverage from licensed insurers."[13] The insurers offered affidavits from a supervisor in the Texas Department of Insurance stating that the surplus lines policies in this case are not subject to Board Order Nos. 23080 and 50602.

Even though *Cutaia* has not been expressly overruled, and even though the Insurance Board's mandatory endorsement requiring prejudice from late notice apparently does not apply to surplus lines policies, we are persuaded that the Texas Supreme Court would require a showing of prejudice in our case.

We believe the court would opt for a uniform rule of construction, reasoning that surplus lines insurers are surely

---

[9]TEX. INS.CODE ANN. art. 5.13-2, § 8 (West Supp.1997).

[10]*Id.* at § 2.

[11]TEX. INS.CODE ANN. art. 1.14-2, § 2(b) (West Supp.1997).

[12]*Id.* at § 3.

[13]*Id.* at § 1.

aware that their policies, like all policies issued to Texas residents, are subject to Texas law and the rules of construction followed by the Texas courts. We note that nothing we can find in the Insurance Code suggests that the Legislature intended to deprive the Texas Supreme Court of its traditional authority, under the common law, to adopt rules of construction for insurance policies, as it does for all contracts.

We are strongly influenced by the Texas Supreme Court's decision in *Hernandez v. Gulf Group Lloyds,* 875 S.W.2d 691 (Tex.1994), decided over two decades after *Cutaia.* In *Hernandez,* the daughter of the plaintiffs was killed in an automobile accident involving another driver. The other driver was solely at fault. The parents and daughter had uninsured/underinsured motorist coverage provided in their policy with the defendant insurer. Without the consent of the insurer, the plaintiffs settled with the other driver for the modest limits of his insurance coverage, and sought recovery from their insurer under the underinsured motorist coverage. The insurer refused coverage on grounds that the plaintiffs had failed to obtain the insurer's consent to the settlement. The policy had a settlement-without-consent clause, excluding coverage where the insured settles with any person who may be legally liable for the injury without the insurer's consent. The clause provided that "insurance does not apply ... to bodily injury or property damage with respect to which the insured ... without written consent of the company, make[s] any settlement with

7

any person ... who may be liable therefore...."[14]

The court held that the insurer must show prejudice despite a dissent that cited *Cutaia* and wrote:  "[T]his case is not about a breach of contract.  This case is about coverage....  In refusing to impose a prejudice requirement, this Court [in *Cutaia* ] stated that even though an injustice might occur by disallowing an otherwise valid claim, this Court should not overreach it boundaries and imply new standards into insurance contracts."[15]

The majority in *Hernandez* held that "an insurer may escape liability on the basis of a settlement-without-consent exclusion only when the insurer is actually prejudiced by the insured's settlement with the tortfeasor."[16]  The court's reasoning was straightforward.  It recognized that insurance policies are contracts subject to general rules of contract construction.  It noted that a fundamental tenet of contract law is that "when one party to a contract commits a material breach of that contract, the other party is discharged or excused from any obligation to perform."[17]  It then held that where the insurer is not prejudiced by the breach, the breach is not material, the insurer has not been deprived of the benefit of the bargain, and it should not be relieved of its obligation to provide coverage.

We believe that the reasoning of *Hernandez* applies with equal

---

[14]*Id.* at 694 (Enoch, J., dissenting).

[15]*Id.*

[16]*Id.* at 692.

[17]*Id.*

8

if not greater force to a notice-of-occurrence, notice-of-claim, or notice-of-suit clause. The fundamental principle of contract law recognized in *Hernandez*—that a material breach by one contracting party excuses performance by the other party, and an immaterial breach does not—is equally applicable to notice cases. In the words of *Hernandez,* "an insurer who is not prejudiced by [the breach] may not deny coverage...."[18] If anything, we believe that the failure to give notice of a claim poses a smaller risk of prejudice than failure to obtain consent to a settlement. In many instances of untimely notice of a claim, the insurer is not prejudiced at all, and ultimately may not face any coverage obligation. Conversely, in many if not most cases where an insured settles a case without the insurer's consent, the insurer faces at least some liability. If the Texas Supreme Court does not presume prejudice in a settlement-without-consent case, we are persuaded that it would not presume prejudice in a failure-of-notice case.

We also believe that the Texas Supreme Court would consider the law of other jurisdictions. In *Hernandez* the court did so.[19] Our court has also recognized that, where the state's highest court has not provided clear guidance, we may look to the rule in other jurisdictions in conducting our *Erie* analysis.[20] A leading treatise recognizes as the majority rule that the insurer is not required to

---

[18]*Id.* at 693.

[19]*Id.* at 693 n. 4.

[20]*Browning Seed,* 812 F.2d at 1002-3.

prove prejudice to prevail in a lack of notice case.[21]  However, the same treatise notes, in a lengthy footnote in its pocket part, a modern trend in favor of requiring proof of prejudice.[22]  We believe the Texas Supreme Court would follow this modern trend, as *Hernandez* is entirely consistent with it.

Because we conclude that the district court based its summary judgment on an incorrect interpretation of Texas law, we remand the case for further proceedings.

REVERSED and REMANDED.

---

[21]8 JOHN A. APPLEMAN & JEAN APPLEMAN, INSURANCE LAW AND PRACTICE § 4732 (1981).

[22]*Id.* at n. 10 (Supp.1995) (citing *Healy Tibbitts Const. Co. v. Foremost Ins. Co.,* 482 F.Supp. 830 (N.D.Cal.1979);  *Weaver Bros., Inc. v. Chappel,* 684 P.2d 123 (Alaska 1984) (noting "modern trend" in favor of considering prejudice);  *Ramos v. Northwestern Mutual Ins. Co.,* 336 So.2d 71 (Fla.1976);  *Champion v. Panel Era Mfg. Co.,* 410 So.2d 1230 (Fla.App.1982);  *Ouellette v. Maine Bonding & Cas. Co.,* 495 A.2d 1232 (Me.1985);  *Washington v. Federal Kemper Ins. Co.,* 60 Md.App. 288, 482 A.2d 503 (1984);  *Johnson Controls, Inc. v. Bowes,* 381 Mass. 278, 409 N.E.2d 185 (1980);  *Morales v. National Grange Mut. Ins. Co.,* 176 N.J.Super. 347, 423 A.2d 325 (1980);  *Great American Ins. Co. v. C.G. Tate Constr. Co.,* 303 N.C. 387, 279 S.E.2d 769 (1981);  *Lusch v. Aetna Cas. & Surety Co.,* 272 Or. 593, 538 P.2d 902 (1975);  *Halsey v. Fireman's Fund Ins. Co.,* 68 Or.App. 349, 681 P.2d 168, (1984);  *Pickering v. American Employers Ins. Co.,* 109 R.I. 143, 282 A.2d 584 (1971);  *A & W Artesian Well Co. v. Aetna Cas. & Sur. Co.,* 463 A.2d 1381 (R.I.1983)).  *See also Campbell v. Allstate Ins. Co.,* 60 Cal.2d 303, 32 Cal.Rptr. 827, 384 P.2d 155 (1963);  *Brakeman v. Potomac Ins. Co.,* 472 Pa. 66, 371 A.2d 193, 195, 198 (1977) (adopting prejudice requirement and noting "a trend of late in several jurisdictions away from the classic contractual approach towards a view that considers prejudice to the insurance company as a material factor in determining whether to relieve the insurance company of its coverage obligations by virtue of late notification.").