**GEMMY INDUSTRIES CORPORATION,**
Plaintiff,

v.

**ALLIANCE GENERAL INSURANCE COMPANY, et al. Defendants.**

**No. 3–98–CV–0014–BD.**

United States District Court,
N.D. Texas.

Nov. 17, 1998.

Jeffrey E. Cook, Sullivan Parker & Cook, Dallas, Texas, for Plaintiff.

Veronica M. Bates, Alissa K. Christopher, Cowles & Thompson, Dallas, Texas, for Defendant Alliance General Insurance Company.

John Tollefson, Knox & Tollefson, Dallas, Texas, for Defendant American Equity Insurance Company.

## MEMORANDUM OPINION AND ORDER

KAPLAN, United States Magistrate Judge.

This case is before the Court on cross-motions for summary judgment. All parties seek a judicial determination as to whether defendants have a duty to defend and indemnify plaintiff under the terms of their respective insurance policies. The Court holds that plaintiff is not entitled to coverage because it breached the notice provisions of both policies.

### I.

Plaintiff Gemmy Industries Corporation was insured at different times under two comprehensive general liability policies issued by Alliance General Insurance Company and American Equity Insurance Company. The Alliance policy covered the period from May 4, 1995 to May 4, 1996. The American Equity policy was in force from May 4, 1996 to May 4, 1997. Both insurance policies provide coverage for

" '[a]dvertising injury' caused by an offense committed in the course of advertising ... goods, products or services." (Am. Eq. Exh. 1B at 17; Alliance Exh. C at 5). "Advertising injury" is defined as an "injury arising out of one or more of the following offenses:

(a) Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

(b) Oral or written publication of material that violates a person's right of privacy;

(c) Misappropriation of advertising ideas or style of doing business;

(d) Infringement of copyright, title or slogan."

(Am. Eq. Exh. 1B at 26; Alliance Exh. C at 12).

Plaintiff was sued by Fun–Damental Too, Ltd. in February 1996.[1] Fun–Damental originally asserted claims for: (1) unfair competition; (2) injury to business reputation; (3) tortious interference with contract; (4) trade dress infringement; and (5) false designation of origin under Section 43(a) of the Lanham Act. (Am. Eq. Exh. 2 ¶¶ 44–59). On July 11, 1996, the complaint was amended to add a claim for copyright infringement. (Am. Eq. Exh. 3 ¶¶ 74–78). The copyright claim was dismissed on December 16, 1996. (Am. Eq. Exh. 7 at 15.)

Plaintiff did not tender notice of these claims to American Equity until May 5, 1997. Alliance was first notified of the lawsuit on June 4, 1997. Both insurance companies denied coverage and refused to provide a defense. (Am. Eq. Exh. 5; Alliance Exh. G). Plaintiff asked American Equity to reconsider its decision in light of the copyright infringement claim raised in the amended complaint.[2] (Am.Eq.Exh. 6). Thereafter, American Equity agreed to provide a defense subject to a reservation of rights. (Am.Eq.Exh. 10).

On October 7, 1997, plaintiff settled with Fun–Damental for $100,000. Plaintiff then submitted demands to Alliance and American Equity for the amount of the settlement and $124,700 in legal fees and expenses. (Am. Eq. Exh. 11; Alliance Exh. F). Once again, both insurance companies denied coverage. This lawsuit followed.[3] The case is now before the Court on cross-motions for summary judgment. All parties maintain that they are entitled to judgment as a matter of law based on the definition of "advertising injury" and the notice provisions of the policies.

II.

Summary judgment is proper when there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d

---

1. This lawsuit was filed in the United States District Court for the Southern District of New York. *Fun–Damental Too. Ltd. v. Gemmy Industries Corporation, et al.,* No. 96–CIV–1103. At issue was a novelty item manufactured by plaintiff known as the "Currency Can." Fun–Damental alleged that this item was identical or confusingly similar to its own product called the "Toilet Bank."

2. Plaintiff neglected to advise its insurer that this claim had been dismissed five months earlier.

3. Plaintiff originally sued for breach of contract, violations of the Texas Insurance Code, and breach of the duty of good faith and fair dealing. However, the extra-contractual claims have been dismissed either by stipulation or on a Rule 12(b)(6) motion. *See* MEMORANDUM OPINION AND ORDER. 3/23/98. Only the breach of contract claim remains pending.

265 (1986). A dispute is "genuine" if the issue could be resolved in favor of either party. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Thurman v. Sears, Roebuck & Co.,* 952 F.2d 128, 131 (5th Cir.), *cert. denied,* 506 U.S. 845, 113 S.Ct. 136, 121 L.Ed.2d 89 (1992). A fact is "material" if it might reasonably affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Matter of Gleasman,* 933 F.2d 1277, 1281 (5th Cir.1991). Cases involving the interpretation of an insurance policy are particularly appropriate for summary disposition. *See Principal Health Care of Louisiana v. Lewer Agency, Inc.,* 38 F.3d 240, 242 (5th Cir.1994); *SnyderGeneral Corporation v. Great American Insurance Co.,* 928 F.Supp. 674, 677 (N.D.Tex.1996) (Kaplan, M.J.).

The movant has the initial burden of demonstrating the absence of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan,* 45 F.3d 951, 954 (5th Cir. 1995). The burden then shifts to the non-movant to show that summary judgment is not proper. *Duckett v. City of Cedar Park, Texas,* 950 F.2d 272, 276 (5th Cir. 1992). The non-movant may satisfy its evidentiary burden by tendering depositions, affidavits, and other competent evidence. *Topalian v. Ehrman,* 954 F.2d 1125, 1131 (5th Cir.), *cert. denied,* 506 U.S. 825, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992). All the evidence must be viewed in the light most favorable to the party opposing the motion. *Rosado v. Deters,* 5 F.3d 119, 122 (5th Cir.1993).

## III.

The threshold issue in this case is whether defendants had a duty to defend plaintiff in the Fun–Damental litiga-tion. All parties agree that the resolution of this issue is governed by the "eight corners test" or "complaint allegation rule." Under Texas law, the duty to defend is determined solely by reference to the allegations of the complaint and the terms of the policy. *Lafarge Corp. v. Hartford Casualty Insurance Co.,* 61 F.3d 389, 393 (5th Cir.1995); *American Alliance Insurance Co. v. Frito–Lay, Inc.,* 788 S.W.2d 152, 153–54 (Tex.App.—Dallas 1990, writ dism'd). The allegations of the complaint must be taken as true. *Gulf Chemical & Metallurgical Corp. v. Associated Metals & Minerals Corp.,* 1 F.3d 365, 369 (5th Cir.1993); *Continental Savings Ass'n v. United States Fidelity & Guaranty Co.,* 762 F.2d 1239, 1243 (5th Cir.), *as amended,* 768 F.2d 89 (5th Cir.1985). The duty to defend "is not affected by facts ascertained before suit, developed in the process of the litigation, or by the ultimate outcome of the suit." *American Alliance,* 788 S.W.2d at 154; *see also Colony Insurance Co. v. H.R.K., Inc.,* 728 S.W.2d 848, 850 (Tex.App.—Dallas 1987, no writ). The insurer must provide a defense if the complaint contains at least one claim that is facially within the policy's coverage. *Lafarge,* 61 F.3d at 393; *Rhodes v. Chicago Insurance Co.,* 719 F.2d 116, 119 (5th Cir. 1983).

Defendants contend that the claims alleged in the Fun–Damental litigation do not arise out of "an offense committed in the course of advertising ... goods, products or services" and do not fall within the definition of "advertising injury." The Court will address these issues first.

## A.

The insurance policies provide coverage for advertising injuries "caused by an offense committed in the course of advertising ... goods, products or services."[4]

---

**4.** The insurance policies also cover "bodily injury" and "property damage." However, plaintiff does not seek coverage under these provisions.

(Am. Eq. Exh. 1B at 17; Alliance Exh. C at 5). Defendants maintain that coverage is not available under this policy provision because plaintiff was sued for *selling* knock-off novelty items, not for *advertising* them. However, all the cases cited in support of this argument involve claims of patent infringement. *See Simply Fresh Fruit, Inc. v. Continental Insurance Co.,* 94 F.3d 1219, 1222 (9th Cir.), *cert. denied,* 519 U.S. 965, 117 S.Ct. 388, 136 L.Ed.2d 304 (1996); *National Union Fire Insurance Co. Of Pittsburgh, Pa. v. Siliconix Incorporated,* 729 F.Supp. 77, 79 (N.D.Cal. 1989); *A. Meyers & Sons Corp. v. Zurich American Insurance Group,* 74 N.Y.2d 298, 303, 546 N.Y.S.2d 818, 545 N.E.2d 1206, 1208–09 (1989). Patent infringement occurs when a person makes, uses, or sells a patented invention. 35 U.S.C. § 271(a); *see also Simply Fresh Fruit,* 84 F.3d at 1109; *Siliconix,* 729 F.Supp. at 79. "[M]ere advertising, without more, cannot constitute actionable patent infringement." *Siliconix,* 729 F.Supp. at 79.

By contrast, Fun–Damental sued plaintiff for false designation of origin and trade dress infringement under Section 43(a) of the Lanham Act. 15 U.S.C. § 1125(a). Such claims inherently and necessarily implicate advertising activities. The term "advertise" is defined as:

> To advise, announce, apprise, command, give notice of, inform, make known, publish. To call a matter to the public attention by any means whatsoever. Any oral, written, or graphic statement made by the seller in any manner in connection with the solicitation of business and includes, without limitation ... statements and representations ... contained in any notice, handbill, sign, catalog, or letter, or printed on or contained in any tag or label attached to or accompanying any merchandise.

BLACK'S LAW DICTIONARY 54 (6th ed.1990). Given this broad definition, it is impossible to allege a Lanham Act claim "without the infringing mark being used to identify the goods or services to the public." *J.A. Brundage Plumbing & Roto–Rooter, Inc. v. Massachusetts Bay Ins.,* 818 F.Supp. 553, 558 (W.D.N.Y.1993), *vacated at attorneys' request,* 153 F.R.D. 36 (W.D.N.Y. 1994).[5] *See also Dogloo, Inc. v. Northern Insurance Co. of New York,* 907 F.Supp. 1383, 1391 (C.D.Cal.1995).

■ Such is the case here. Fun–Damental specifically alleged numerous ways in which the design and appearance of plaintiff's product mimicked its own and caused customer confusion. (Am. Eq. Exh. 3 ¶¶ 27, 30–31). It is clear that plaintiff was sued for using this trade dress to "call public attention" to its product. Such a use constitutes advertising activity.[6]

### B.

The next question is whether the Lanham Act claims fall within one of the policy definitions of "advertising injury." As noted above, both insurance policies cover "advertising injury" arising from: (1) personal or business defamation; (2) publication of material that violates the right of

---

**5.** The district court vacated its prior opinion at the request of the parties in order to facilitate a settlement. However, it did so only with serious reservations and "as a courtesy to the attorneys involved ..." *J.A. Brundage Plumbing,* 153 F.R.D. at 38.

**6.** Plaintiff also maintains that the claim for injury to business reputation constitutes an "advertising injury." However, Fun–Damental sought only equitable relief with respect to that claim. (Am. Eq. Exh. 3 at 15). The insurance policies cover only claims for monetary damages. (Am. Eq. Exh. 1B at 17; Alliance Exh. C at 5). Consequently, the claim for injury to business reputation is not covered. *See The Feed Store, Inc. v. Reliance Insurance Co.,* 774 S.W.2d 73, 74–75 (Tex. App.—Houston [14th Dist.] 1989, writ denied).

privacy; (3) misappropriation of advertising ideas or style of doing business; and (4) infringement of copyright, title, or slogan. Most courts have held that trademark and trade dress infringement constitute "misappropriation of advertising ideas or style of doing business." *See, e.g. Union Insurance Co. v. The Knife Co.,* 897 F.Supp. 1213, 1216 (W.D.Ark.1995); *Poof Toy Products, Inc. v. United States Fidelity & Guaranty Co.,* 891 F.Supp. 1228, 1235–36 (E.D.Mich.1995); *J.A. Brundage Plumbing,* 818 F.Supp. at 557; *P.J. Noyes Co. v. American Motorists Insurance,* 855 F.Supp. 492, 494–95 (D.N.H.1994).[7]

The Sixth Circuit reached a different result in *Advance Watch Co., Ltd. v. Kemper National Insurance Co.,* 99 F.3d 795 (6th Cir.1996). In that case, the court held that the term "misappropriation" as used in a comprehensive general liability insurance policy referred to the taking of interests other than those protected by trademark law. *Id.* at 802, 804. This conclusion was based on a historical distinction between the tort of misappropriation and trademark infringement:

> [T]here has been, and perhaps continues to be, a body of law which gives meaning to the term "misappropriation of advertising ideas or style of doing business," and which renders the term unambiguous, as referring to a category of actionable conduct separate from trademark and trade dress infringement. This court finds such an unambiguous meaning in this term, reading it against the background of a now somewhat extensive body of law. (Citations omitted).
>
> Taking such authorities as these into account, this court concludes ... that "misappropriation of advertising ideas or

style of doing business" does not refer to a category or grouping of actionable conduct which includes trademark or trade dress infringement ... [but] does refer to the unauthorized taking or use of interests other than those which are eligible for protection under statutory or common-law trademark law.

*Id.* at 802.

◼ The Court declines to adopt this reasoning. To do so would circumvent well-established principles of contract construction. The terms of an insurance contract must be given their plain, ordinary, and generally accepted meanings unless the policy clearly indicates that the contractual terms are used in a different or technical sense. *Gulf Chemical & Metallurgical Corp.,* 1 F.3d at 369; *Puckett v. United States Fire Insurance Co.,* 678 S.W.2d 936, 938 (Tex.1984); *see also East Texas Fire Insurance Co. v. Kempner,* 12 Tex.Civ.App. 533, 34 S.W. 393, 400 (Tex. Civ.App.), *writ ref'd,* 89 Tex. 652, 35 S.W. 1069 (1896) (terms of insurance contract "should not be taken in a technical and narrow sense, but should be taken in their ordinary sense, as commonly used and understood ..."). The ordinary meaning of "misappropriate" is not ambiguous or unclear. It means "[t]o appropriate wrongly," that is, to wrongfully "take possession of or make use of for oneself." WEBSTER'S II NEW COLLEGE DICTIONARY 700, 56 (1995 ed.). There is no ordinary distinction between misappropriations that are actionable under trademark law and those that are not. Thus, "misappropriation of advertising ideas or style of doing business" means "the wrongful taking of the manner by which another advertises its goods or

---

7. Several courts also have held that trademark or trade dress infringement constitutes "infringement of title or slogan." *See, e.g. Energex Systems Corp. v. Fireman's Fund Insurance Co.,* 1997 WL 358007 at *4 (S.D.N.Y. June 25, 1997); *Sentex Systems, Inc. v. Hartford Accident & Indemnity Co.,* 882 F.Supp. 930, 944 (C.D.Cal.1995), *aff'd,* 93 F.3d 578 (9th Cir.1996); *J.A. Brundage Plumbing,* 818 F.Supp. at 559.

services." *The Knife Co.*, 897 F.Supp. at 1216, *citing J.A. Brundage Plumbing*, 818 F.Supp. at 557.

▮ The Court concludes that trade dress infringement constitutes a "misappropriation of advertising ideas or style of doing business" under both the Alliance and American Equity policies. This claim was clearly alleged in the amended complaint filed by Fun–Damental. Nevertheless, defendants argue that they had no duty to defend plaintiff because they were not promptly notified of the claim or suit.

## IV.

▮ Both insurance policies contain standard notice provisions. The American Equity policy specifies that notice of a claim or suit must be given "as soon as practicable." (Am. Eq. Exh. 1B at 23). The Alliance policy requires "immediate written notice." (Alliance Exh. C at 9). The purpose of such a provision is to enable the insurer to take prompt action to control the litigation and interpose a defense. *Weaver v. Hartford Accident & Indemnity Co.*, 570 S.W.2d 367, 369 (Tex. 1978); *Duzich v. Marine Office of America Corp.*, 980 S.W.2d 857, 865–66 (Tex.App.—Corpus Christi, October 8, 1998, n.w.h.). "As soon as practicable" means that notice must be provided within a reasonable time under the facts and circumstances of the particular case. *Dairyland County Mutual Insurance Co. of Texas v. Roman*, 498 S.W.2d 154, 157 (Tex.1973); *E.B. Smith Co. v. United States Fidelity & Guaranty Co.*, 850 S.W.2d 621, 625 (Tex.App.—Corpus Christi 1993, writ denied). Timely notice is a condition precedent to an insurer's liability under the policy. *Duzich*, 980 S.W.2d at 865–66; *Ohio Casualty Group v. Risinger*, 960 S.W.2d 708, 710 (Tex.App.—Tyler 1997, writ denied).

▮ Plaintiff waited more than a year before it notified defendants of the Fun–Damental lawsuit. This unexplained delay constitutes untimely notice as a matter of law. *See Bolivar County Board of Supervisors v. Forum Insurance Co.*, 779 F.2d 1081, 1084 (5th Cir.1986) (five month delay in providing notice was not "as soon as practicable"); *Members Mutual Insurance Co. v. Cutaia*, 476 S.W.2d 278, 279 (Tex. 1972) (same); *National Union Fire Insurance Co. v. Bourn*, 441 S.W.2d 592, 595 (Tex.Civ.App.—Fort Worth 1969, writ ref'd n.r.e.) (unexplained 44–day delay in giving notice was not "as soon as practicable" as a matter of law). However, the Fifth Circuit recently held that coverage is not affected unless the insurer is prejudiced by the untimely notice. *Hanson Production Co. v. Americas Insurance Co.*, 108 F.3d 627, 630 (5th Cir.1997). The court based its decision on an order issued by the State Board of Insurance in 1973, "requiring a mandatory endorsement in Texas general liability and general automobile policies stating that a failure to give notice under the policy does not bar coverage unless the insurer has been prejudiced." *Id.* at 629.

The Court acknowledges that *Hanson Production* is binding precedent, but finds it inapplicable to the facts of this case. The mandatory endorsement promulgated by the State Board of Insurance provides:

> As respects bodily injury liability coverage and property damage liability coverage, unless the company is prejudiced by the insured's failure to comply with the requirement, any provision of this policy requiring the insured to give notice of action, occurrence or loss, or requiring the insured to forward demands, notices, summons or other legal process, shall not bar liability under this policy.

*Chiles v. Chubb Lloyds Insurance Co.*, 858 S.W.2d 633, 635 (Tex.App.—Houston [1st Dist.] 1993, writ denied), *citing* STATE BOARD OF INSURANCE, REVISION OF TEXAS STANDARD PROVISION FOR GENERAL LIABILITY

P<small>OLICIES</small>—A<small>MENDATORY</small> E<small>NDORSEMENT</small>—N<small>O</small>-<small>TICE</small>, Order No. 23080 (March 13, 1973) (emphasis added). By its own terms, the required endorsement applies only to bodily injury and property damage coverage under general liability policies.[8] There is no prejudice requirement under Texas law with respect to coverage for advertising injury. *See id.* at 635–36 (no prejudice required to be shown where policy at issue was not subject to endorsement). Plaintiff breached the notice provisions of the insurance policies and is not entitled to coverage or a defense for that reason.

## *CONCLUSION*

There are no genuine issues of material fact and defendants are entitled to judgment as a matter of law. Accordingly, defendants' motions for summary judgment are granted and plaintiff's motion is denied.

SO ORDERED.

## *JUDGMENT*

For the reasons stated in the memorandum opinion and order dated November 17, 1998, the motions for summary judgment filed by the Alliance General Insurance Company and American Equity Insurance Company are granted. Plaintiff's claims against these defendants are dismissed with prejudice. All costs are taxed against plaintiff.

SO ORDERED.

---

**8.** *Hanson Production* involved a claim of property damage. *See Hanson Production,* 108 F.3d at 628.