In re **NUCENTRIX BROADBAND NETWORKS, INC.,** a/k/a Heartland Wireless Communications, Inc., Debtor.

**Gulf Underwriters Insurance Company, Plaintiff,**

v.

**Nucentrix Broadband Networks, Inc., Defendant.**

**Bankruptcy No. 03–39123 HDH–11. Adversary No. 03–03940.**

United States Bankruptcy Court, N.D. Texas, Dallas Division.

April 26, 2004.

John E. Mitchell, Josiah M. Daniel, III, Todd C. Crosby, Vinson & Elkins, LLP, Dallas, TX, for Debtor.

David D. Ritter, Karin Marshall Zaner, Michael A. Logan, Kane Russell Coleman & Logan, Dallas, TX, for Plaintiff.

Cameron D. Gray, Stewart H. Thomas, Beckham and Thomas, L.L.P., Josiah M. Daniel, III, Todd C. Crosby, Vinson & Elkins, LLP, Dallas, TX, for Defendant.

## MEMORANDUM OPINION GRANTING MOTION FOR SUMMARY JUDGMENT BY PLAINTIFF AND DENYING MOTION FOR SUMMARY JUDGMENT BY DEFENDANT

HARLIN D. HALE, Bankruptcy Judge.

### Facts and Procedural History

Debtor Nucentrix Broadband Networks, Inc. ("Nucentrix") is a wireless cable company that provides multi-channel television services and Internet services to customers and subscribers. Prior to the bankruptcy filing, Nucentrix entered into an insurance contract (the "Policy") with Gulf Underwriters Insurance Company, ("Gulf") styled as a "CyberLiability Plus Policy." The Policy offered financial protection, under specified circumstances, in the event that Nucentrix was sued regarding its "Cyberspace Activities." The Policy covered "damages" and "claim expense" as defined in the Policy.

On or about February 28, 2002, Nucentrix was subject to a class action lawsuit, styled *Sara Santellana v. Nucentrix Broadband Networks, Inc. and DIRECTV, Inc.*, filed in the United States District Court for the Southern District of Texas, Corpus Christi Division (the "Santellana Lawsuit"). The Santellana Lawsuit alleged in part that Nucentrix was in violation of the Cable Communications Act. Nucentrix received notice of the Santellana Lawsuit on or about March 4, 2002, and was formally served on or about March 11, 2002.

Nucentrix had previously been the subject of approximately sixteen other class action lawsuits in various state and federal jurisdictions throughout Southern Texas. These suits alleged violations of state and federal consumer leasing and warranty statutes, and inappropriate charging of late fees. The Policy did not provide coverage for these claims, and Nucentrix did

not seek a defense from Gulf or reimbursement for legal expenses. Of these various lawsuits filed against Nucentrix, the Santellana Lawsuit was the only suit covered by the Policy. In the process of defending the Santellana Lawsuit, Nucentrix retained the same legal team that it had retained in connection with the other suits against it. The counsel hired by Nucentrix successfully defended the Santellana Lawsuit by obtaining a summary judgment disposing all claims against Nucentrix within about four months of the filing of the case. The state court entered the summary judgment on June 7, 2002.

On June 19, 2002, Nucentrix faxed Gulf notice of the *Santellana* claim, demanding coverage for the defense costs it had incurred, which amounted to approximately $140,000. In a letter dated July 9, 2002, Gulf informed Nucentrix that it was in receipt of Nucentrix's claim and was ready and willing to defend Nucentrix on a going forward basis. However, Gulf denied Nucentrix' claims for legal fees and expenses because the fees and costs associated with the defense of the Santellana Lawsuit had been incurred without Nucentrix having obtained prior approval by Gulf, as was required under the Policy. Gulf stated that, under the terms of the Policy and under Texas case law, it would not reimburse Nucentrix for the "pretender" legal fees and expenses. (See, Exhibit F to Nucentrix's Motion for Summary Judgment, July 9, 2002 Letter from Joel P. Brady of Gulf to Robert W. Taylor of Nucentrix, p. 6: "[A]ny such pretender fees and costs will neither be applied to your self-insured retention, nor will they be paid by the carrier.")

Gulf filed a Petition for Declaratory Judgment in the District Court for Dallas County seeking a declaration that it had no duty to reimburse Nucentrix for pretender fees and costs incurred in the defense of the Santellana Lawsuit. Subsequently, and unrelated to the lawsuit with Gulf, Nucentrix filed a Chapter 11 reorganization case and properly removed the underlying state court lawsuit to this Court. Nucentrix and Gulf then filed cross motions for summary judgment, which are presently before this Court.

### Summary Judgment Standard

Under Rule 56(c) of the Federal Rules of Civil Procedure, made applicable herein by Rule 7056 of the Federal Rules of Bankruptcy Procedure,

> The [summary] judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Here, the parties agree that there are no genuine issues of material fact and that the issues are ripe for a summary judgment ruling. Although the parties agree as to the underlying facts, the parties disagree on whether, under the terms of the Policy and applicable Texas law, Gulf is required to reimburse Nucentrix for the fees and costs incurred in defense of the Santellana Lawsuit.

### Legal Analysis

### Does the Policy Require Gulf to Reimburse Nucentrix for Defense Costs Incurred without Prior Authorization and Approval from Gulf?

■ In Texas, the same rules apply to the interpretation of insurance contracts as apply to the interpretation of other contracts. *See Trinity Universal Ins. Co. v. Cowan,* 945 S.W.2d 819, 823 (Tex.1997)("Interpretation of insurance contracts in Texas is governed by the same rules as interpretation of other contracts.")

(citations omitted); *see also Valmont Energy Steel, Inc. v. Commercial Union Ins. Co.,* 359 F.3d 770, 773 (5th Cir.2004). In construing an insurance policy, the Court's primary concern is to give effect to the written expression of the parties' intent. *Forbau v. Aetna Life Ins. Co.,* 876 S.W.2d 132, 133 (Tex.1994) (citations omitted); *see also American Nat'l Gen. Ins. Co. v. Ryan,* 274 F.3d 319, 323 (5th Cir.2001)("A court's primary concern is to give effect to the intentions of the parties as expressed by the policy language.") (citations omitted). The Court may only look beyond the language of the policy if the language is ambiguous. *Valmont,* 359 F.3d at 773 (citing *Puckett v. United States Fire Ins. Co.,* 678 S.W.2d 936, 938 (Tex.1984) (citation omitted)). And, although any ambiguity must be resolved in favor of the insured, *see id.* at 774, "the fact that the parties disagree as to coverage does not create an ambiguity." *Id.* at 773–74 (citations omitted). The policy must be considered as a whole, and each part of the policy must be given effect. *Id.* at 773 (citation omitted); *Forbau,* 876 S.W.2d at 133 (citation omitted). Moreover, when a term is defined in a policy, the definition controls. *Trinity Universal Ins. Co. v. Cowan,* 945 S.W.2d at 823.

Here, the Policy provides that Gulf "will pay on behalf of the Insured all Damages and Claim Expense ... within the Policy Limit which the Insured becomes legally obligated to pay because of liability as a result of one or more Claims ...." (Policy, ¶ I) Gulf does not dispute that the Santellana Lawsuit involved a Claim covered by the Policy. And, Nucentrix does not allege that it is entitled to Damages under the Policy because Nucentrix, having obtaining a summary judgment disposing of all claims against it, was not liable for any damages, as that term is defined in the Policy. Rather, the parties disagree about whether Gulf is required to reimburse Nu-centrix for the legal fees and expenses incurred in defense of the Santellana Lawsuit as a "Claim Expense" under the Policy.

It is undisputed that the legal fees and expenses incurred by Nucentrix in defense of the Santellana Lawsuit are the type of expenses covered by the definition of "Claim Expense." However, Gulf denies coverage of the Claim Expense on the grounds that Nucentrix (1) breached its duty under the Policy to provide Gulf with "prompt notice ... of any Claim or any circumstance likely to result in a Claim under the policy" and (2) failed to obtain prior authorization and approval of its retention of counsel as required by the Policy. Nucentrix argues that the Policy does not require it to obtain prior approval from Gulf of defense counsel and that even though Nucentrix was required to give Gulf "prompt notice" of the Claim under the Policy, Texas law prevents Gulf from denying coverage unless it can prove that it was prejudiced by the late notice.

### *What is a "Claim Expense"?*

The first issue is one of interpretation of the Policy's definition of "Claim Expense." In the Policy:

> "Claim Expense" means, when authorized and approved by the Company: 1. fees charged by an attorney in defense of a Claim ...; 2. all other fees, costs and expenses which result from the investigation, discovery, adjustment, defense, negotiation, arbitration, mediation, settlement or appeal of a Claim;
> ....

(Policy, ¶ IV(C)). Gulf argues that a "Claim Expense" for which Gulf would be liable under the Policy only includes those attorneys fees and costs incurred "in defense of a Claim" that had been "authorized and approved by the Company" prior

to being incurred. Nucentrix argues that the language "when authorized and approved by the Company" does not require *prior* authorization and approval by Gulf. Nucentrix argues that Gulf used the language "subject to prior approval by the Company" in other portions of the Policy and that, had it meant to have required *prior* approval and authorization of a "Claim Expense" for such expense to be reimbursable under the Policy, it could have included language to that effect in the definition of "Claim Expense." Nucentrix argues that Gulf's choice of language, at the very least, makes this provision of the Policy ambiguous, which would require this Court to interpret it in Nucentrix's favor. The Court disagrees.

Nucentrix is correct that, under Texas law, an ambiguity in a Policy is to be resolved in favor of the insured. However, as the Court noted above, a mere disagreement over coverage does not create an ambiguity. As the Texas Supreme Court stated in *Forbau*, the court "is bound to read all parts of a contract together to ascertain the agreement of the parties" and "each part of the contract should be given effect." *Forbau*, 876 S.W.2d at 134 (citations omitted). Indeed, the Fifth Circuit, in applying Texas law, has stated, "The policy must be considered as a whole, and each part given effect and meaning." *Valmont*, 359 F.3d at 773 (citations omitted). Furthermore, the terms used in a policy are to be given their plain, ordinary meaning. *Ryan*, 274 F.3d at 323 (citation omitted). If the language in question is susceptible to only one reasonable interpretation, then the policy is not ambiguous, and the rules favoring the insured in the event of an ambiguity do not apply. *Puckett v. United States Fire Ins. Co.*, 678 S.W.2d 936, 938 (Tex.1984); *Canutillo Indep. Sch. Dist. v. Nat'l Union Fire Ins. Co.*, 99 F.3d 695, 701 (5th Cir.1996)(citing *Puckett*, 678 S.W.2d at

938; *Nat'l Union Fire Ins. Co. v. Hudson Energy Co., Inc.*, 811 S.W.2d 552, 555 (Tex. 1991)).

Here, the language "when authorized and approved by the Company" is susceptible to only one reasonable interpretation: that authorization and approval of an expense is required prior to the expense being incurred for it to be covered as a "Claim Expense" under the Policy. Any other interpretation would render the language meaningless in this context because if Nucentrix were allowed to incur these expenses prior to approval and authorization and still be able to recover for them under the Policy, Gulf's right under the Policy to approve or authorize those expenses would be eviscerated by Nucentrix's actions. Nucentrix's interpretation would, effectively, read out of the definition of "Claim Expense" the language "when authorized and approved by the Company." Such a construction would lead to the absurd result that an insured like Nucentrix could incur unlimited expenses in defense of a claim under a policy without ever notifying the insurer of the claim or obtaining approval of the defense costs. Then, after the expenses were already incurred, the insured could notify the insurer of the claim and the claim expenses and expect to be reimbursed under the policy. Such an interpretation is not reasonable.

This reading of the Policy is also necessary to avoid a direct conflict with specific language in other parts requiring Nucentrix to employ defense counsel "subject to prior approval by the Company, for the defense of such Claim or circumstance ...." (Policy, ¶ V(E)1(b)). Participation by the insurer, Gulf, in the defense from inception of the lawsuit is contemplated by the Policy.

Thus, the Policy is not ambiguous. For an expense to qualify as a "Claim Expense" under the Policy, Nucentrix must have obtained the prior authorization and approval from Gulf. Because the insured did not obtain such authorization and approval, Gulf is not liable under the terms of the Policy to reimburse Nucentrix for the attorney's fees and costs incurred in defending the Santellana Lawsuit prior to the time that it gave notice to Gulf of the lawsuit.

### Must Gulf Show Prejudice to Avoid Paying under the Policy?

 Nucentrix argues that, even if the Policy required it to give Gulf notice of the Santellana Lawsuit and obtain approval of defense counsel prior to incurring defense costs and expenses, under Texas law, Gulf cannot deny coverage unless it can show prejudice by Nucentrix's failure to give notice or obtain prior approval of "Claim Expenses."

### The Late Notice Line of Cases

Nucentrix cites a number of cases referred to as "late notice" cases. (See, Nucentrix's Motion for Summary Judgment, p. 10, ¶ 24, n. 15, citing *Hanson Prod. Co. v. Ams. Ins. Co.*, 108 F.3d 627 (5th Cir.1997); *Liberty Mut. Ins. Co. v. Cruz*, 883 S.W.2d 164 (Tex.1993); and *Duzich v. Marine Office of Am. Corp.*, 980 S.W.2d 857 (Tex.App.—Corpus Christi 1998)). In those cases, where notice of a claim was a condition precedent under a policy to coverage, and the notice was given late, the courts required the insurer to show prejudice as a result of the late notice to avoid liability under the policy. This rule of Texas law apparently arose from a line of cases involving insurance policies that contained a mandatory endorsement required by the Texas State Board of Insurance in Board Order No.

23080, promulgated in 1973. The Board Order states,

> As respects bodily injury liability coverage and property damage liability coverage, unless the company is prejudiced by the insured's failure to comply with the requirement, any provision of this policy requiring the insured to give notice of action, occurrence or loss, or requiring the insured to forward demands, notices, summons or other legal process, shall not bar liability under this policy.

Board Order 23080 was superseded by Board Order NO. 50602 in 1987, which maintains the same prejudice requirement. *See Hanson,* 108 F.3d at 629. However, because the Policy was not a "bodily injury liability" policy or a "property damage" policy, it did not contain, nor was it the type of policy required under Board Orders 23080 and 50602 to contain, the above quoted endorsement language. See *Gemmy Indus. Corp. v. Alliance Gen. Ins. Co.*, 190 F.Supp.2d 915, 921–22 (N.D.Tex.1998), a case involving an advertising injury, where the court found that the Board Order, by its terms, only applied to policies involving bodily injury or property damage liability coverage. Where the endorsement was neither included in the policy nor required to be included in the policy by the Board Order, there was no prejudice requirement under Texas law. *Id.* (citing *Chiles v. Chubb Lloyds Ins. Co.*, 858 S.W.2d 633, 635–36 (Tex. App—Houston 1993, writ denied)). Therefore, the "late notice" cases simply do not apply to the Policy.

Furthermore, the Fifth Circuit has recognized that the "late notice" cases do not apply unless the insurer is attempting to deny all coverage for failure to comply with the notice provisions of the policy. *See Lafarge Corp. v. Hartford Cas. Ins. Co.*, 61 F.3d 389, 399 n. 19 (5th Cir.1995). In *Lafarge,* the Fifth Circuit rejected the

plaintiff's argument that pre-tender defense costs are recoverable unless the insurer shows that it was actually prejudiced by the delay and found that "prejudice is only a factor when the insurer is seeking to avoid all coverage for failure to comply with the notice provisions of the policy." *Id.* (citation omitted). Here, Gulf only denied the claim for defense costs incurred prior to the tender of notice by Nucentrix. Gulf did not deny coverage under the Policy for defense costs "going forward" (although no further defense costs were ultimately incurred because the plaintiffs in the Santellana Lawsuit did not appeal the summary judgment).

Without belaboring the point, this case is not a "late notice" case because Gulf is not liable under the Policy to reimburse the defense costs at issue, not because Nucentrix failed to give "prompt notice" of the claim as required under the Policy, but because the defense costs here simply do not qualify as a "claim expense" as that term is defined in the Policy. The issue is not notice but failure of Nucentrix to obtain authorization and approval of its defense costs for those costs to be covered as a "claim expense."

### *The Issue of Prejudice*

■ Even if this case turned on Nucentrix's failure to give notice of the claim to Gulf in a timely manner, and, even if Gulf were required to show prejudice to avoid liability for the defense costs at issue, prejudice to Gulf has clearly been shown. Under the Policy, Gulf had the right to approve Nucentrix's choice of defense counsel, presumably so that Gulf could monitor and control the defense costs for which it would ultimately be responsible under the Policy. By choosing counsel and incurring significant defense costs without prior approval from Gulf, Nucentrix took away the very rights that

Gulf had bargained for in the Policy. In the present case Nucentrix chose effective counsel who obtained a summary judgment. However, such results will not always be the case or outcome. The insurer, Gulf, is entitled by the Policy to be involved in the choice of counsel and in the incurring of claims expenses. Otherwise, the provision would have no meaning in the insurance contract. Clearly, Gulf was prejudiced by Nucentrix's failure to obtain prior approval from Gulf of its choice of defense counsel and of the costs incurred in defending the Santellana Lawsuit.

For these reasons, the Court will grant Gulf's Motion for Summary Judgment and deny Nucentrix's Motion for Summary Judgment.

**IT IS ORDERED** that the Motion for Summary Judgment by Gulf Underwriters Insurance Company be, and hereby is, **granted**, and that the Motion for Summary Judgment by Nucentrix Broadband Network, Inc. be, and hereby is, **denied**.

It is so ordered.

### *FINAL SUMMARY JUDGMENT*

ON THIS DATE the Motion to Enter Final Summary Judgment filed by Gulf Underwriters Insurance Company ("Plaintiff") against Nucentrix Broadband Networks, Inc. ("Defendant") ("Motion to Enter Final Summary Judgment ") came on for consideration. On or about April 23, 2004, the Court issued its Memorandum Opinion Granting Motion for Summary Judgment by Plaintiff and Denying Motion for Summary Judgment by Defendant, which granted Plaintiff's Motion for Final Summary Judgment in its entirety and denied Defendant's Motion for Final Summary Judgment in its entirety. The Court, after reviewing the moving papers and the pleadings on file herein, is of the opinion that Plaintiff's Motion to Enter

Final Summary Judgment should be **GRANTED.** It is, therefore,

**ORDERED, ADJUDGED AND DE-CREED** that Plaintiff's Motion to Enter Final Summary Judgment is **GRANTED** in all respects. It is further

**ORDERED, ADJUDGED AND DE-CREED** that the pre-tender defense costs incurred by Defendant before June 19, 2002 in the lawsuit styled *Sara Santellana v. Nucentrix Broadband Networks, Inc. and DIRECTV, Inc.,* Civil Action No. C-02-079 (the "Pre-tender Defense Costs") are not owed by Plaintiff under the terms of CyberLiability Plus Policy No. GU0448813 and that Plaintiff has no duty or obligation to pay for such Pre-tender Defense Costs or any other legal fees incurred by Defendant. It is further

**ORDERED, ADJUDGED AND DE-CREED** that Plaintiff is granted judgment against Defendant for its reasonable and necessary attorneys' fees incurred in the trial court, in the amount of $28,000.00. It is further

**ORDERED, ADJUDGED AND DE-CREED** that Plaintiff is granted judgment against Defendant, for all costs of court in the amount of $313.00. It is further

**ORDERED, ADJUDGED AND DE-CREED** that the total judgment amount awarded against Defendant in the amount of TWENTY EIGHT THOUSAND THREE HUNDRED AND THIRTEEN DOLLARS AND NO/00 ($28,313.00) shall bear post-judgment interest at the rate of five (5%) percent per annum compounded annually from the date hereof until paid. It is further

**ORDERED, ADJUDGED AND DE-CREED** that Plaintiff recover from Defendant an additional reasonable fee in the amount of $35,000 in the event that this case is appealed to the Northern District of Texas (with the condition that Defendant ultimately is unsuccessful), that Plaintiff recover from Defendant an additional $40,000.00 in the event this case is appealed to the Fifth Circuit Court of Appeals (with the condition that Defendant ultimately is unsuccessful), that Plaintiff recover from Defendant an additional $20,000.00 in the event this case is subject to an application for petition for review by the United States Supreme Court (with the condition that Defendant ultimately is unsuccessful), and that Plaintiff recover from Defendant an additional $30,000.00 in the event the United States Supreme Court grants a writ of certiorari in this case (with the condition that Defendant ultimately is unsuccessful). It is further

**ORDERED, ADJUDGED AND DE-CREED** that all Defendant's counterclaims in the above-referenced adversary proceeding be and are hereby dismissed with prejudice and that Defendant recover nothing on such counterclaims. It is further

**ORDERED, ADJUDGED AND DE-CREED** that Plaintiff is given leave to amend its proof of claim filed in the above referenced bankruptcy case and may attach this judgment to such proof of claim to reflect that amount of its claim, and such claim is hereby allowed by the Court.